WELLS v COULTER SALES, INC

Docket No. 47787. Submitted November 6, 1980, at Detroit.—Decided April 8, 1981. Leave to appeal applied for.

John Wells was drowned when a forklift he was operating slid down an embankment onto a frozen pond, broke through the ice, and came to rest at an angle with the access door to the enclosed cab underwater. Attempts to gain access to the cab to rescue Wells were unsuccessful. Susan Wells, the widow and administratrix of the estate of John Wells, brought an action against Coulter Sales, Inc., the dealer which sold the forklift, Allis Chalmers Manufacturing Company, the manufacturer of the forklift, and Full Vision, Inc., the designer of the cab. The complaint alleged negligent design of the cab by failure to provide an adequate secondary means of access and breach of warranty in that the forklift was not fit for its intended purpose because of the failure to provide a secondary exit. Coulter Sales was dismissed during trial. The Genesee Circuit Court, Philip C. Elliott, J., entered a judgment on a jury verdict of no cause of action as to both the remaining defendants. Plaintiff appeals, alleging that the trial court erred by denying a request for an instruction on comparative negligence, by instructing the jury on contributory negligence, in its instruction on the issue of misuse of the product, and in the use of the term "state of the art" relative to the manufacturer's requisite standard of care. *Held:*

1. Because this case was tried prior to adoption of the comparative negligence doctrine in Michigan and before enactment of recent products liability statutes, comparative negli-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, New Topic Service, Comparative Negligence §§ 25, 28.
Modern development of comparative negligence doctrine having applicability to negligence actions. 78 ALR3d 339.
[2] 57 Am Jur 2d, Negligence § 321.
63 Am Jur 2d, Products Liability § 32.
[3] 5 Am Jur 2d, Appeal and Error § 545.
75 Am Jur 2d, Trial § 906.
[4] 63 Am Jur 2d, Products Liability §§ 22, 101, 135, 136.
[5] 63 Am Jur 2d, Products Liability §§ 3, 22, 101, 112, 119, 135, 136.

gence did not apply and the court's refusal to instruct on that rule was not error.

2. The trial court did not err in instructing the jury on contributory negligence. This was a straight products liability case in which there was no "work place", no general or subcontractor relationship, nor a factory or industrial setting, and it is not controlled by those cases holding that a plaintiff employee's recovery may not be diminished by his own negligence if the liability of the defendant arises from the failure to provide adequate safety devices in the work area.

3. The instructions given regarding the misuse of a product were proper in view of the facts of the case.

4. The trial court's instructions did not suggest that reference to customary usage was determinative of the standard of care to be applied to the manufacturer and were otherwise proper in regard to establishing the requisite standard of care.

Affirmed.

1. NEGLIGENCE — COMPARATIVE NEGLIGENCE.

The doctrine of comparative negligence applies to any case in which the negligence of the plaintiff is at issue and in which the trial commences after February 8, 1979, including those cases in which a retrial is to occur because of a remand on any issue.

2. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PRODUCTS LIABILITY — STATUTES.

Neither contributory nor comparative negligence may be raised as a defense to an action brought by an injured employee if the liability of the defendant arises from the failure to provide adequate safety devices in the work place; however, where there is no "work place", no general or subcontractor relationship, nor a factory or industrial setting, the case becomes one of straight products liability in which the plaintiff's negligence may properly be raised and will not bar recovery; such negligence will, however, diminish the amount of damages recoverable (MCL 600.2949; MSA 27A.2949).

3. APPEAL — JURY INSTRUCTIONS — FAILURE TO OBJECT.

Failure to object to an allegedly erroneous jury instruction prior to the commencement of jury deliberations precludes appellate review of the issue.

4. PRODUCTS LIABILITY — MISUSE OF PRODUCT — PROXIMATE CAUSE.

A plaintiff in a products liability action may not recover if the

proximate cause of his injury is found to have stemmed from his own conduct, such as misuse of a product, and not from the product's lack of fitness, because the proofs would fail to establish a causal connection between the defect and the injury.

5. PRODUCTS LIABILITY — MISUSE OF PRODUCT — PROXIMATE CAUSE — IMPLIED WARRANTY.

The fact that a plaintiff's misuse of a product concurred with a defect in the product to cause injury to the plaintiff will not bar recovery under a theory of implied warranty if the failure of the manufacturer to provide a product reasonably fit for the use intended or reasonably foreseen is found to be a proximate cause of the injury, unless it can be said that the plaintiff voluntarily and unreasonably proceeded to encounter the known risk.

*Leitson, Dean, Dean, Segar & Hart, P.C.* (by *Leonard B. Shulman*), for plaintiff.

*Wilson, Portnoy, Basso & Leader, P.C.* (by *Robert P. Roth*), for Allis Chalmers Manufacturing Company.

*Kitch, Suhrheinrich, Smith, Sauriber & Drutchas, P.C.* (by *Jeremiah J. Kenney*), for Full Vision, Inc.

Before: M. F. CAVANAGH, P.J., and D. F. WALSH and D. C. RILEY, JJ.

M. F. CAVANAGH, P.J. Plaintiff's deceased husband, John Wells, was engaged in moving a duck house owned by his employer on the employer's property. Wells was instructed not to perform the task on the day of the accident, which forms the basis of this suit, because of the poor weather conditions, which were blizzard-like. The duck house was approximately 75 feet away from a pond located on the farm property. Wells was familiar with the location of the pond on the

property. The pond was partially visible even though it was frozen and covered with snow.

A fellow employee, Lavern Huddleston, testified that Wells drove a forklift between the duck house and the pond to gain an approach to the duck house. He then proceeded to back the forklift some 75 feet into the pond. It was established at trial that it was not necessary to drive the forklift that distance to accomplish the task; 10 to 15 feet would have been sufficient.

As Wells' forklift began to slide down the eight-foot embankment into the pond, Huddleston observed Wells open the right side door and attempt to get out, but Wells was unable to do so before the forklift broke through the ice. The forklift tipped over, door side down, so as to block the door opening. The cab was resting at an angle in water approximately four feet deep.

Huddleston dove into the freezing water in an attempt to rescue Wells. Wells appeared unconscious and rescuers were unable to gain access through the submerged and blocked door. An attempt to open the left side window from the outside failed. An attempt to break the glass surrounding the cab using a crowbar as a hammer also proved unsuccessful. Further rescue attempts were terminated, as the rescuers realized that enough time had elapsed to assume that Wells was drowned.

The forklift which Wells was driving was equipped with an enclosed cab, inside which the operator sat while driving the truck. The cab was designed and fabricated by Full Vision and manufactured by Allis Chalmers. The cab was specifically manufactured to be adapted for a variety of uses. Wells' forklift included a "Buckmaster" feature, which was a large circular saw on the left

side of the vehicle. The clutch mechanism of the forklift was also located on the left side, inside the cab. To insure the safety of the operator, shields were in place on the left side of the vehicle. A 32-inch by 20-inch wing-type window was installed on the left side of the vehicle. When the latching mechanism was turned completely, the entire window and frame would fall out, allowing for an exit in addition to the door on the right side of the vehicle. Testimony indicated that a large man could extricate himself from the cab through the window with little difficulty. The cab was surrounded by glass; the windshield was laminated safety glass and the side windows were tempered glass, installed to prevent foreign objects from penetrating the cab and striking the operator. This glass panel could be kicked in or out for escape or rescue purposes.

Plaintiff's original complaint was filed against Allis Chalmers and Coulter Sales, the retailer from whom the forklift and cab were purchased. Claims against Coulter were dismissed during the trial. The complaint was subsequently amended to include Full Vision. The complaint stated two claims. The first, based on negligence, alleged that the defendants negligently designed the cab by failing to provide an adequate secondary (emergency) means of access and egress, and the second, based on breach of warranty, alleged that the forklift was not fit for its intended purpose because it was not designed with an adequate secondary exit, *i.e.*, a left door on the cab.

The defendants raised the affirmative defenses of misuse of product and contributory negligence based on the deceased's negligent manner of driving. By pretrial order, the trial court barred the use of contributory negligence as an affirmative

defense, but reversed that ruling during the trial and allowed it as a defense. At the conclusion of proofs, plaintiff requested an instruction on comparative negligence. The request was denied. Over objection, the jury was instructed on contributory negligence. The jury returned a verdict of no cause of action as to both defendants on both counts.

Plaintiff filed a motion for new trial but arguments and briefs were adjourned until after receipt of the trial transcripts. Prior to the receipt of the trial transcripts, the Supreme Court, on February 8, 1979, adopted the doctrine of comparative negligence in *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), and the Legislature enacted the products liability law, 1978 PA 495; MCL 600.2945 *et seq.;* MSA 27A.2945 *et seq.*

Following submission of briefs on the motion, the motion for a new trial was argued and subsequently denied. Plaintiff appeals as of right.

The first issue this Court is called upon to decide in this case is whether the trial court committed reversible error by denying plaintiff's request for an instruction on comparative negligence.

It has been determined by the Supreme Court of this state that the comparative negligence rule of *Placek v City of Sterling Heights, supra,* would apply to any retrial of a negligence action case where it would have been applicable at the original trial. The *Placek* rule of comparative negligence is to be applied to all cases in which the trial commences after the date of *Placek,* February 8, 1979, including those in which a retrial is to occur because of remand on any issue. *Placek, supra,* 667, *Rivers v Ford Motor Co,* 90 Mich App 94, 97; 280 NW2d 875 (1979), and *Tulkku v Mackworth Rees Division of Avis Industries, Inc,* 406

Mich 615; 281 NW2d 291 (1979), on remand to the Court of Appeals, 101 Mich App 709; 301 NW2d 46 (1980). As this case was tried to conclusion before *Placek, supra,* was announced and the products liability statute enacted, the trial court's refusal to instruct on comparative negligence was not error.

We must next determine the more difficult question of whether the trial court erred reversibly by instructing the jury on contributory negligence.

In the instant case, as in *Rivers,* the machinery used by the injured person was equipped with safety features: here, the impact resistant glass and the left side window that could be opened out by turning the latch completely; in *Rivers,* the press machine was originally outfitted with safety devices that had been removed by the operator who was subsequently injured. *Timmerman v Universal Corrogated Box Machinery Corp,* 93 Mich App 680; 287 NW2d 316 (1979), *Stambaugh v Chrysler Corp,* 96 Mich App 166; 292 NW2d 510 (1980), relying on the Supreme Court's decisions in *Funk v General Motors Corp,* 392 Mich 91; 220 NW2d 641 (1974), and *Tulkku, supra,* held that the rule in Michigan is that neither contributory negligence nor comparative negligence may be raised as a defense to an alleged negligent failure by an employer to provide safety equipment in the work place.

In *Timmerman,* this Court stated that comparative negligence would not apply at the retrial in a products liability action based on an alleged failure to provide safety equipment in a catwalk in an industrial plant. Judge MAHER, writing for the Court in *Timmerman,* 686, stated:

"In view of the policy reasons underlying the *Funk* and *Tulkku* decisions, being the fostering of worker protection and encouragement of employers and manu-

facturers to provide proper and adequate safety equipment, it seems to us that the employee's negligence cannot be raised as a defense, whether it be under a doctrine of contributory negligence or comparative negligence."

In *Stambaugh,* this Court again held that contributory negligence did not apply in an action alleging lack of safety equipment in the work place. In concluding that the jury should consider damages unclouded by considerations of contributory negligence, the Court noted by way of footnote that comparative negligence instructions "would, of course, be improper on remand since a finding of causal negligence by defendant forecloses *any* consideration of plaintiff's fault". *Stambaugh, supra,* 173, fn 3 (emphasis in original).

In *Funk, supra,* the Supreme Court determined that contributory negligence does not bar recovery where the trier of fact may reasonably find that the failure to provide necessary safety equipment in the work place was the cause, in fact, of the injury. The *Funk* Court noted:

"The policy behind the law of torts is more than compensation of victims. It seeks also to encourage implementation of reasonable safeguards against risks of injury." *Funk, supra,* 104.

Similarly, the *Tulkku* Court held that contributory negligence was no defense to an alleged negligent failure to provide safety equipment in the work place and said:

"If we are to continue to foster the protection of the *worker* and to encourage manufacturers to take all reasonable precautions in designing and manufacturing safety devices, we cannot allow the discredited doctrine

of contributory negligence to undermine these goals."
*Tulkku, supra,* 406 Mich at 623. (Emphasis added.)

Thus, we conclude that a plaintiff's recovery
may not be diminished by his own negligence if
the liability of the defendant arises from the fail-
ure to provide adequate safety devices in the work
place. However, where, as here, there is no "work
place" or, as in *Funk, supra,* and in each one of its
progeny to date, no general or subcontractor rela-
tionship nor a factory or industrial setting, the
rationale of *Funk* and *Tulkku* disappears. We have
here a product, a forklift, that allegedly was de-
signed negligently so that when used in a reason-
ably foreseeable manner it was unsafe and dam-
aged the plaintiff. Alternatively, it is alleged that
certain of the safety features of the product were
defective, thus causing damage to plaintiff. This is
a straight products liability case, clearly unrelated
to any industrial or common work area setting.
Were we to apply *Funk* and *Tulkku* to these facts,
we would have to do so in almost every products
liability case, for we can perceive of no products
liability situation in which the product is not
allegedly unsafe by virtue of the defect. Such an
interpretation would have precluded the defenses
of contributory negligence and misuse of product
in all products liability cases and would now
render nugatory the following language of the
products liability act, MCL 600.2949; MSA
27A.2949:

"Sec. 2949. (1) In all products liability actions brought
to recover damages resulting from death or injury to
person or property, the fact that the plaintiff may have
been guilty of contributory negligence shall not bar a
recovery by the plaintiff or the plaintiff's legal represen-
tatives, but damages sustained by the plaintiff shall be

diminished in proportion to the amount of negligence attributed to the plaintiff."

We then would be left with strict liability in all products cases. Such is not yet the law in Michigan. Under these circumstances, therefore, it was not error for the trial court to instruct on contributory negligence.

The plaintiff has failed to preserve the issue of the propriety of the court's instructions to the jury on each party's burden of proof on the issue of misuse of product because the alleged deviation from the SJI was not brought to the trial court's attention prior to the commencement of jury deliberations. *Javis v Ypsilanti Board of Education*, 393 Mich 689, 702-703; 227 NW2d 543 (1975). Despite the failure to preserve this issue for appeal, we are not convinced that the instructions here were erroneous when viewed in their entirety. *Berlin v Snyder*, 89 Mich App 38, 41; 279 NW2d 322 (1979), *lv den* 407 Mich 867 (1979).

We find that the misuse of product instructions utilized by the trial court were proper in view of the facts of this case.

This Court in *Dooms v Stewart Bolling & Co*, 68 Mich App 5; 241 NW2d 738 (1976), *lv den* 397 Mich 862 (1976), held:

"If *the* proximate cause of a plaintiff's injury is found to have stemmed from his own conduct, such as misuse of a product, and not from the product's lack of fitness, he may not recover since the proofs have failed to establish a causal connection between the defect and injury. *Casey v Gifford Wood Co*, [61 Mich App 208; 232 NW2d 360 (1975)] *supra*, at 218. Moreover, if the failure of a manufacturer to provide a product reasonably fit for the use intended or reasonably foreseen is found to be *a* proximate cause of the injury to plaintiff, the fact that plaintiff's misuse concurred with the defect to

cause the harm will not bar recovery under a theory of implied warranty unless it can be said that plaintiff voluntarily and unreasonably proceeded to encounter the known risk." (Emphasis in original.) *Dooms, supra,* 17-18.

Here, the risk of the submergence of the vehicle at an angle so that the right side driver door would not open cannot be said to be a foreseeable and reasonably anticipated risk on the manufacturer's part. Nor was this a known risk within the normal use of the product for the purpose for which it was intended. Prosser, Law of Torts (3d ed), p 656, *Snider v Bob Thibodeau Ford, Inc,* 42 Mich App 708; 202 NW2d 727 (1972), *lv den* 388 Mich 812 (1972), and *Barefield v La Salle Coca-Cola Bottling Co,* 370 Mich 1; 120 NW2d 786 (1963).

Finally, we are not convinced that the trial court erroneously used the term "state of the art" in instructing the jury as to the manufacturer's requisite standard of care. The court's instruction did not suggest that the reference to customary usage was determinative of the standard to be applied. It instructed the jury not to look only to typical industry practice but to consider that along with the state of the science and engineering, state and Federal regulations or lack of the same, and all other evidence in the case pertaining to the state of the art.

We affirm the judgment below. Defendants may tax costs.