### JOHNSTON v BILLOT

Docket No. 49053. Submitted June 4, 1981, at Lansing.—Decided
   September 21, 1981. Leave to appeal applied for.

Milo Nichol was hired by the owner of the Sunset Trailer Park in
   Sandusky, Michigan, Thomas Boyle, to help with an excavation
   job at the park which was being supervised by the prior owner,
   O. J. Campbell. Wayne Billot, a contractor who did business as
   Billot Excavating Company, was hired to dig a trench from an
   existing septic system to an expanded sewer line. Nichol
   climbed into the trench after the excavation was completed,
   and shortly after that the wall of the trench, which was not
   shored or braced in any way, collapsed, and Nichol was killed.
   Milo Nichol's widow, Bertha Nichol, received workers' compen-
   sation benefits from his employer, Thomas Boyle. Mrs. Nichol
   then brought an action against the excavator, Wayne Billot, as
   a third-party tortfeasor, in Sanilac Circuit Court. The trial
   ended in a jury verdict of no cause of action and judgment was
   entered, Allen E. Keyes, J. The Court of Appeals affirmed, 80
   Mich App 263; 263 NW2d 345 (1977). The Supreme Court
   reversed and remanded for a new trial, 406 Mich 284; 279
   NW2d 761 (1979). Plaintiff, Phyllis Johnston, decedent's daugh-
   ter, then replaced Bertha Nichol as administratrix of dece-
   dent's estate. Retrial commenced on November 6, 1979, after
   the doctrine of comparative negligence had been adopted by the

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence § 435.
   Modern development of comparative negligence doctrine having
   applicability of negligence actions generally. 78 ALR3d 339.
[2] 75 Am Jur 2d, Trial § 925.
[3] 2 Am Jur 2d, Administrative Law §§ 746, 749.
[4] 57 Am Jur 2d, Negligence § 79.
   75 Am Jur 2d, Trial § 745.
[5] 57 Am Jur 2d, Negligence § 272.
[6, 8] 2 Am Jur 2d, Administrative Law §§ 306, 307, 656.
[7] 1 Am Jur 2d, Administrative Law §§ 37-39, 307.
   73 Am Jur 2d, Statutes § 194.
[8] 73 Am Jur 2d, Statutes §§ 145, 146.
[9] 75 Am Jur 2d, Trial §§ 166, 167.

Supreme Court. Defendant, Billot, then sought to have Thomas Boyle added as a "named nonparty defendant" for purposes of establishing the degree of negligence attributable to Boyle. The court ruled that the jury would be instructed to consider the degree of negligence attributable to Boyle, Billot and the deceased. The court also instructed the jury that whatever percentage of negligence the jury found to be attributable to Boyle would be used to reduce the amount of damages recoverable by plaintiff. In addition, the court, over defendant's objections, instructed the jury on Rule 905 of the Construction Safety Act of 1963, which requires that excavations over four feet in depth be braced, sloped or shored. The jury returned a verdict in favor of plaintiff in the amount of $95,000. The decedent was found to be free of negligence and the degree of negligence attributable to Boyle and defendant was found to be 50% each. Plaintiff prepared a judgment for $95,000, to which defendant objected. Following a hearing on the matter, the court reduced the judgment against defendant to $47,500, to reflect defendant's 50% liability, Allen E. Keyes, J. Plaintiff appeals and defendant cross-appeals. *Held:*

1. The doctrine of joint and several liability has not been abolished by the adoption of comparative negligence. The trial court's decision to reduce defendant's liability to correspond to his proportionate fault is reversed.

2. Rule 905 applies to defendant because, although he was not decedent's employer, he was just as responsible as Boyle for insuring that the trench that decedent climbed into was safe. The rule was properly read to the jury to establish the recommended standard for the construction industry. The trial court did not err when it instructed the jury concerning standards for construction industry safety.

3. Defendant's contention that the instruction on Rule 905 was confusing was not properly preserved for appeal since defendant did not object at trial to the instructions on these grounds. Reviewing the instruction as a whole, it was not misleading or confusing.

The trial court's order reducing defendant's liability for plaintiff's damages to 50% is reversed and the case is remanded for entry of an order reinstating the full damage award. The case is affirmed in all other matters.

1. NEGLIGENCE — JOINT AND SEVERAL LIABILITY — COMPARATIVE NEGLIGENCE.

The doctrine of joint and several liability has not been abolished by the adoption of comparative negligence.

2. APPEAL — JURY INSTRUCTIONS.

The Court of Appeals will not find reversible error in a trial court's jury charge where the charge, considered in its entirety, presents the theories of the parties and the applicable law.

3. TRIAL — ADMINISTRATIVE RULES AND REGULATIONS — JURY INSTRUCTIONS.

A trial court's refusal to instruct the jury concerning applicable rules and regulations promulgated by an administrative agency is reversible error.

4. NEGLIGENCE — TRIAL — JURY INSTRUCTIONS — TYPICAL INDUSTRY PRACTICES.

A trial court may instruct the jury to look at typical industry practices when determining whether a party has acted negligently.

5. NEGLIGENCE — ADMINISTRATIVE RULES, REGULATIONS OR ORDERS — DUTY.

Violation of a duty imposed by administrative rules, regulations or safety codes is evidence of negligence.

6. ADMINISTRATIVE LAW — ADMINISTRATIVE RULES — JUDICIAL CONSTRUCTION — STATUTES.

The rules of statutory construction apply when an administrative rule is being construed (MCL 24.232; MSA 3.560[132]).

7. STATUTES — RULES — JUDICIAL CONSTRUCTION.

Further interpretation or construction of the terms of a statute or rule will be avoided where the statute or rule is unambiguous on its face; however, if ambiguity exists, effect must be given to the intention of the Legislature or the administrative agency in enacting the statute or rule.

8. STATUTES — RULES — JUDICIAL CONSTRUCTION.

A court, in order to resolve a perceived ambiguity in a statute or rule, will look to the object of the statute or rule, the evil or mischief which it is designed to remedy and will apply a reasonable construction which best accomplishes the purpose of the statute or rule.

9. APPEAL — PRESERVING QUESTION.

Failure to object to jury instructions at the trial level results in the issue not being properly preserved for appellate review.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *David K. Barnes, Jr.*), for plaintiff.

*David W. Hearsch,* for defendant.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

M. J. KELLY, J. This appeal arises after retrial of a wrongful death action caused by a trench cave-in. It is familiar to our reports. The sequence began when defendant, an excavation contractor, was hired to excavate a trench on the premises of the Sunset Trailer Park in Sandusky, Michigan. The excavation was part of a planned expansion of the trailer park, which required that a trench be dug from the existing septic system to the expansion sewer line.

The owner of the trailer park, Thomas Boyle, hired the prior owner, O. J. Campbell, to supervise the work involved in the expansion of the trailer park. Plaintiff's decedent, Milo Nichol, a retiree who resided in the trailer park, was also hired by Boyle to help with the expansion project.

On August 9, 1971, the excavation of the trench took place with the defendant Billot, Campbell and Nichol present. The trench was over 9 feet deep, 10 to 12 feet long, and 30 inches wide, and the walls were not sloped, braced or shored in any fashion.

After the excavation was completed, Nichol climbed into the trench for the purpose of making a hole in the septic tank. Shortly after he entered the trench, the west wall collapsed and Nichol, who had no escape, was killed instantly.

Subsequently, decedent's widow received workers' compensation benefits from Boyle. Suit was then brought against defendant as a third-party

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tortfeasor, as permitted by MCL 418.827(1); MSA 17.237(827)(1).

The first trial commenced in March, 1976, and ended in a verdict of no cause of action. This Court affirmed that verdict in *Nichol v Billot,* 80 Mich App 263; 263 NW2d 345 (1977). However, the Supreme Court reversed and remanded the case for a new trial on a holding that Billot was an independent contractor as a matter of law. *Nichol v Billot,* 406 Mich 284; 279 NW2d 761 (1979).

Prior to the new trial, the present plaintiff, Phyllis Johnston, decedent's daughter, replaced Bertha Nichol as administratrix of decedent's estate.

Retrial commenced on November 6, 1979. Because trial took place after the Supreme Court's decision in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), the law of comparative negligence applied. On November 5, 1979, the day before trial commenced, the defendant filed a motion "to add named non-party defendant". He sought to have Boyle added to the case for the sole purpose of establishing the degree of negligence attributable to Boyle. He was not made a party, nor was contribution sought. The defendant simply argued that, because the law of comparative negligence applied, resolution of the case required that the jury determine the degree of negligence attributable to each of the participants in the events leading up to the decedent's death. The court ruled, over the plaintiff's objection, that the jury would be instructed to consider the degree of negligence attributable to the defendant, to the deceased and to Boyle. At the close of proofs, the court instructed the jury to consider any negligence of the three individuals and indicated that the percentage of negligence that the jury found to

be attributable to Boyle would be used by the court to reduce the amount of damages recoverable by the plaintiff.

Over the defendant's objection, the court instructed the jury concerning the requirements of Rule 905, promulgated pursuant to the Construction Safety Act of 1963, which requires that excavations over four feet in depth be braced, sloped, or shored.

The jury returned a verdict in favor of plaintiff in the amount of $95,000. The jury found the plaintiff's decedent to be free from negligence. It found the degree of negligence attributable to the defendant and to Boyle to be 50% each. The court then stated:

"I believe under the *Placek* decision, the Court has a duty to reduce the amount of the judgment by the amount of the plaintiff's negligence, and in this case the jury has found no negligence on the part of the plaintiff, so there would be no reduction."

The plaintiff prepared a judgment for $95,000, to which the defendant objected. A hearing was held on December 3, 1979, after which the court reduced the judgment against the defendant to $47,-500 to reflect the jury's finding that the defendant was only 50% responsible.

The plaintiff appeals as of right. The defendant has filed a timely cross-appeal.

## I

Plaintiff's sole assignment of error on appeal is that the trial court erred when it reduced the amount of the damages awarded to correspond to the proportionate degree of defendant's fault. According to plaintiff, this interpretation abolishes

the principle of joint and several liability. Defendant counters by arguing that the trial court's order was proper in light of the Supreme Court's decision in *Placek.* Defendant alleges that the court's option to adopt the pure rule of comparative negligence requires that defendant be limited to damages proportionate to the degree of fault attributable to it.

In *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980), this Court addressed the effect of *Placek* on the common-law rule that joint tortfeasors were jointly and severally liable for the entire amount of damages caused by their common action. In *Weeks,* the plaintiff was injured as a result of a sexual assault committed by Albert Feltner. The plaintiff alleged that her injuries were caused by the negligence of the owners of the apartment complex where the assault occurred and certain realtors who were agents of the owners. When the jury found defendants jointly and severally liable, defendants claimed that the doctrine of comparative negligence required the abandonment of the concept of joint and several liability. This Court affirmed the trial court's denial of defendants' request by writing:

"Defendants contend that comparative negligence requires that a defendant only be liable to the extent of his own wrongdoing, not only in relation to the plaintiff, but in relation to other defendants as well. See *Placek v City of Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979).

"This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of

cases where the plaintiff is not at fault. The acts of Albert Feltner were foreseeable by the other defendants, and there is nothing inherently inequitable in holding them liable for the resulting injury. The doctrine of comparative negligence does not mandate abandonment of joint and several liability. In fact, a majority of other jurisdictions considering the issue have retained joint and several liability. See, Schwartz, Comparative Negligence, Sec 16.4, p 93 (Supp 1978)." *Weeks, supra,* 395.

This same result was reached by another panel of this Court in *Edwards v Joblinski,* 108 Mich App 371; 310 NW2d 385 (1981).

Other jurisdictions which have adopted comparative negligence and considered this issue have reached the same result.[1] In *Seattle First National Bank v Shoreline Concrete Co,* 91 Wash 2d 230; 588 P2d 1308 (1978), the plaintiff, who represented the estate of a deceased worker who was killed while operating a boom mounted to a truck, brought a wrongful death action against a truck owner and the truck manufacturer. The defendants filed a third-party complaint against the decedent's employer, asserting claims for indemnity, contribution, or apportionment. The employer moved for summary judgment, claiming the workers' compensation act barred third-party claims, but the court denied the motion. The plaintiff appealed, arguing that the trial court's order abolished joint and several liability.

After examining the common-law doctrine of joint and several liability, the Washington Su-

---

[1] Accord: *Tucker v Union Oil Co of California,* 100 Idaho 590; 603 P2d 156 (1979), *American Motorcyle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 146 Cal Rptr 182; 578 P2d 899 (1978), *Dunham v Kampman,* 37 Colo App 233; 547 P2d 263 (1975), *Fitzgerald v Badger State Mutual Casualty Co,* 67 Wis 2d 321; 227 NW2d 444 (1975). See: Schwartz, Comparative Negligence (1978 Supp), § 16.4, p 93.

preme Court refused to abolish the doctrine in light of the state legislature's adoption of comparative negligence. The court wrote:

"Comparative negligence represents an attempt to achieve greater fairness in tort law. *Wenatchee Wenoka Growers Ass'n v Krack Corp,* 89 Wash 2d 847, 849-850; 576 P2d 388 (1978). It operates in favor of an injured party by allowing, rather than barring, recovery by one who is contributorially *[sic]* negligent. *Wenatchee Wenoka Growers Ass'n v Krack Corp, supra* at 850; *Godfrey v State,* 84 Wash 2d 959, 965; 530 P2d 630 (1975); RCW 4.22.010. While comparative negligence *increases* the chance of recovery by one who is contributorially *[sic]* negligent, respondents now suggest that we *restrict* these rights under the rubric of comparative negligence. But, from the perspective of the recovery rights of the injured party, comparative negligence and the suggested abolition of joint and several liability are completely inconsistent." *Seattle Bank, supra,* 236-237. (Emphasis in original.)

The court also found that comparative negligence and joint and several liability were not inconsistent doctrines. The court reasoned that while it might be possible to assign a percentage figure to the relative culpability of multiple tortfeasors, it did not eliminate the fact that each tortfeasor's conduct was a proximate cause of an entire indivisible injury to plaintiff. *Id.,* 237. Furthermore, the court found that if joint and several liability was abandoned, a completely faultless plaintiff could be forced to bear a portion of the loss if any tortfeasor should prove unable to satisfy his proportionate share of the damages. *Id.,* 238. In conclusion, the court stated:

"Finally, even when a plaintiff is partially at fault for his own injury, his culpability is not of the same nature as defendant's. A plaintiff's negligence relates to a

failure to use due care *for his own protection* whereas a defendant's negligence relates to a failure to use due care *for the safety of others.* While a plaintiff's self-directed negligence may justify reducing his recovery in proportion to his degree of *fault,* the fact remains that such conduct, unlike that of a negligent defendant, is not tortious. See *American Motorcycle Ass'n v Superior Court [of Los Angeles County,* 20 Cal 3d 578, 590-591; 146 Cal Rptr 182; 578 P2d 899 (1978)]; Prosser, Law of Torts § 65, p 418.

"Consequently, we are not persuaded that this state's recent adoption of comparative negligence compels a change in our recognition of joint and several liability." *Id.,* 238. (Emphasis in original.)

But the court also reversed the trial court's order allowing defendants to file a third-party complaint against the employer because the workers' compensation act barred such actions. *Id.,* 242.

In this case, the jury attributed 50% of the negligence to both defendant and Boyle, while finding decedent free from negligence. Pursuant to the workers' compensation act, Boyle's payment of compensation was the sole claim plaintiff had against him. MCL 418.131; MSA 17.237(131). Therefore, plaintiff's only source of recovery in a wrongful death action was defendant. To reduce the amount of damages to correspond to defendant's proportionate fault would penalize an innocent plaintiff by requiring the estate to bear 50% of the loss. The unfairness of such a result is a good reason why the doctrine of joint and several liability has not been abolished by the adoption of comparative negligence. The trial court's decision to reduce defendant's liability to correspond to his proportionate fault is reversed.

## II

Defendant has filed a cross-appeal, arguing that the trial court erred when it instructed the jury

concerning Rule 905, Administrative Code, 1964-1965 AACS R 408.1905.[2] According to defendant, the rule was inapplicable because it only applies to employers. Defendant also argues that the court's instructions on Rule 905 were confusing.

This Court will not find reversible error where a jury charge, considered in its entirety, presents the theories of the parties and the applicable law. *Berlin v Snyder,* 89 Mich App 38, 41; 279 NW2d 322 (1979). A trial court's refusal to instruct the jury concerning applicable rules and regulations promulgated by an administrative agency is reversible error. *Duckett v North Detroit General Hospital,* 84 Mich App 426, 436; 269 NW2d 626 (1978). Furthermore, a trial judge may instruct the jury to look at typical industry practices. *Wells v Coulter Sales, Inc,* 105 Mich App 107, 117; 306 NW2d 411 (1981). Finally, violation of a duty imposed by administrative rules, regulations, or safety codes is evidence of negligence. *Beals v Walker,* 98 Mich App 214, 227; 296 NW2d 828 (1980).

At the time of Milo Nichol's death, MCL 408.712; MSA 17.469(2) provided in part:

---

[2] The instruction complained of follows:

"Members of the jury, on August 9, 1971, Rule 905 of the Construction Safety Act of 1963 was in effect. Under Rule 905, titled: excavations, general requirements, it reads as follows: All excavation shall conform to the following requirements: Necessity for shoring, sheeting, bracing, sloping. Unless in solid rock, hard shale, hardpan, or cemented sand and gravel, excavations which directly affect the safety of persons shall be either shored, sheeted and braced, or the material sloped to its angle of repose if over 4 feet in depth in the case of unstable materials and over 5 feet in depth in other materials.

"The next heading is sides and slopes, which reads:

" 'Sides and slopes of excavations shall be maintained in a safe condition by scaling, benching, shelving or bracing.'

"In considering the application of these rules, you should consider that neither Mr. Billot nor Mr. Boyle were cited as being in violation of these rules, and you should further consider that even had these rules been violated there were no penalty provisions in the law at that time, as compliance was not then enforced by the state, but was the recommended standard in the industry that was to be met."

" 'Construction industry' means construction firms and contractors (but not including firms or companies, whose principal business is other than construction work, and whose construction work consists only of maintenance construction work performed on their own property by their own employees) whose classification as construction industry is in accordance with the standard industrial classification manual prepared by the technical committee on industrial classifications, office of statistical standards, 1957 edition, and who are subject to the workmen's compensation law other than by voluntary assumption of the law."[3]

Pursuant to MCL 408.717; MSA 17.469(7), the state construction safety commission promulgated Administrative Code 1964-1965 AACS R 408.1101 *et seq.,* which stated in part:

"This manual establishes the general safety rules and regulations for the construction industry in Michigan. Its purpose is to prevent accidental injuries to construction personnel in the course of their employment."

When construing an administrative rule, the rules of statutory construction apply. MCL 24.232; MSA 3.560(132). If a statute or rule is unambiguous on its face, we will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature, or in this case the administrative agency, in enacting the statute or rule. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To resolve a perceived ambiguity, a court will look to the object of the statute or rule, the evil or mischief which it is designed to remedy, and will apply a reasonable

---

[3] MCL 408.711 *et seq.;* MSA 17.469(1) *et seq.,* was repealed by 1974 PA 154.

construction which best accomplishes the purpose of the statute or rule. *Bennetts v State Employees Retirement Board,* 95 Mich App 616; 291 NW2d 147 (1980).

In this case, it is not clear whether the rules in Administrative Code 1964-1965 AACS R 408.1101 *et seq.* are meant to apply only to employers. Since an ambiguity exists, we must look to the objective of the rules to determine the intent of the commission in promulgating them. It is clear from Administrative Code 1964-1965 AACS R 408.1101 that the purpose of the rules was to provide construction workers with a safe working environment. To accept defendant's interpretation that the rule does not apply to him because he was not Nichol's employer would subvert the intent of the commission in enacting the rules. Defendant was just as responsible as defendant's employer for insuring that the trench Nichols climbed into was safe. Therefore, Administrative Code 1964-1965 AACS R 408.1905 (Rule 905) was applicable to defendant and was properly read to the jury.

Furthermore, the trial court did not instruct the jury that Rule 905 applied to defendant, rather, the judge's instruction was a virtual verbatim description of Rule 905 and informed the jury that the rule establshed the recommended standard for the industry. The trial court did not err when it instructed the jury concerning standards for construction industry safety. *Wells, supra,* 117.

Finally, defendant argues that the instruction concerning Rule 905 was confusing. Since defendant failed to object to the instructions on these grounds, this issue is not properly preserved for review. *Gage v Ford Motor Co,* 102 Mich App 310, 319; 301 NW2d 517 (1980). Furthermore, reviewing the instruction as a whole, it was not misleading or confusing.

The trial court's order reducing defendant's liability for plaintiff's damages to 50% is reversed and this case is remanded for entry of an order reinstating the full damage award. The case is affirmed in all other matters.

Costs to plaintiff.

N. A. BAGULEY, J., concurs in the result only.