GENERAL MOTORS CORPORATION v BUREAU OF SAFETY AND
REGULATION

Docket No. 64513. Submitted May 10, 1983, at Detroit.—Decided
February 10, 1984.

An inspector employed by the Bureau of Safety and Regulation of
the Michigan Department of Labor issued a safety citation to
General Motors Corp, Fisher Body Division, alleging that GMC
failed to provide an operation guard or device on a mechanical
press contrary to the department's regulations. The bureau
issued a decision upholding the validity of the citation. GMC
appealed that decision to the Health and Safety Compliance
and Appeals Board. A hearing referee upheld the citation and
assessed a penalty. The board affirmed the hearing referee's
decision. GMC appealed the decision to the Wayne Circuit
Court. The court, James E. Mies, J., acting for Richard C.
Kaufman, J., reversed the decision of the board, finding that
the operator was prevented from inadvertently reaching the
point of operation because the point was too high and far away.
The Bureau of Safety and Regulation appealed. *Held:*

The language of the department's standards involved here is
unambiguous on its face. The standards contain definitions of
terms that are binding on the courts. The Court of Appeals
should give effect to the agency's intention as clearly expressed
in its regulation. The record supports the findings of the
hearing referee and the board that the press did not have an
attachment or press control device that prevented an operator
from inadvertently touching the point of operation. Location is
not an attachment or device. The circuit court exceeded its
reviewing function and its dismissal of the citation should be
reversed.

Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur 2d, Administrative Law § 612 *et seq.*
[2] 2 Am Jur 2d, Administrative Law § 769.
[3, 4] 2 Am Jur 2d, Administrative Law § 307.
[4] 73 Am Jur 2d, Statutes §§ 145, 194, 196.
[5] 73 Am Jur 2d, Statutes § 225.

1. Administrative Law — Appeal.

A circuit court reviewing the determination of an administrative tribunal should reverse the tribunal's decision only if the decision or order: (a) violates the constitution or a statute, (b) exceeds the agency's authority or jurisdiction, (c) is made upon unlawful procedure, (d) is not supported by competent, material, or substantial evidence, (e) is arbitrary or capricious, or an abuse of discretion, or (f) is affected by any other substantial or material error of law (MCL 24.306; MSA 3.560[206]).

2. Administrative Law — Appeal — Court Rules.

The Court of Appeals reviews a decision of an administrative agency in the same limited manner as a circuit court where a decision of an agency is first appealed to the circuit court and then the circuit court's ruling is appealed to the Court of Appeals; because the appeal to the circuit court is not *de novo,* the Court of Appeals need not find the reviewing court's opinion clearly erroneous in order to reverse the decision (GCR 1963, 517.1).

3. Administrative Law — Administrative Rules — Judicial Construction.

The rules of statutory construction apply when an administrative rule is being construed (MCL 24.232; MSA 3.560[132]).

4. Statutes — Rules — Judicial Construction.

Interpretation or construction of the terms of a statute or rule will be avoided where the statute or rule is unambiguous on its face; however, if ambiguity exists, effect must be given to the intention of the Legislature or the administrative agency in enacting the statute or rule.

5. Words and Phrases — Statutes — Definition of Terms.

A definition of a term in a statute or standard is binding on the courts.

*Francis S. Jaworski,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patrick J. O'Brien* and *Gregory T. Taylor,* Assistants Attorney General, for respondent.

Before: V. J. Brennan, P.J., and Hood and D. S.
DeWitt,* JJ.

Per Curiam. Respondent appeals as of right an
April 7, 1982, Wayne County Circuit Court opinion
which reversed a decision of the Board of Health
and Safety Compliance and Appeals (board) up-
holding a safety citation issued by respondent
against petitioner, General Motors Corporation.

On October 28, 1977, one of respondent's safety
inspection officers observed a mechanical press at
petitioner's Kalamazoo plant without a protective
gate. The inspector issued petitioner a safety cita-
tion alleging that petitioner failed to provide an
operation guard or device on the press contrary to
the respondent Department of Labor's regulations
246(1), 2462, and 2463; 1979 AC, R 408.12461(1),
408.12462, and 408.12463.

After GMC petitioned the bureau to dismiss that
citation, the respondent issued a December 8,
1977, decision upholding the validity of the cita-
tion. GMC appealed that decision to the board. A
hearing referee conducted a hearing in March,
1980, and decided on May 8, 1981, to uphold the
citation and assess a $350 penalty. The board
affirmed the hearing referee's decision on June 9,
1981. GMC appealed the board's decision in the
Wayne County Circuit Court.

The Wayne County Circuit Court found in its
opinion that, because the hearing referee found as
fact that an operator of the press could not inad-
vertently reach the unguarded point of operation
because of the height of the press, GMC had not
violated the regulations. Therefore, the circuit
court vacated the citation and penalty.

Respondent argues in this appeal that the

* Circuit judge, sitting on the Court of Appeals by assignment.

board's decision was supported by competent, material, and substantial evidence on the whole record, was not arbitrary or capricious, and correctly interpreted the department's standard, and thus was not affected by substantial or material error of law. Therefore, respondent argues, the circuit court erred by reversing the board's decision. We agree.

The standards at issue in this case were promulgated by the department pursuant to the legislative authority granted in the Occupational Safety and Health Act, 1974 PA 154, MCL 408.1001 *et seq.;* MSA 17.50(1) *et seq.* The statute mandates that an employer shall comply with those promulgated standards. MCL 408.1011(1)(b); MSA 17.50(11)(1)(b). When an employer does not comply and the department issues a citation for that failure to comply, the employer may seek a review of that citation with the department. MCL 408.1042; MSA 17.50(42). That hearing shall be conducted before a hearing referee as a contested case in accordance with the Administrative Procedures Act (APA); MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* Should the board affirm the hearing referee's decision, the aggrieved party may then seek judicial review of that decision pursuant to the APA, *supra,* MCL 408.1044(3); MSA 17.50(44)(3). The reviewing circuit court may only reverse the board's decision if the decision or order: (a) violates the constitution or a statute, (b) exceeds the agency's authority or jurisdiction, (c) is made upon unlawful procedure, (d) is not supported by competent, material, or substantial evidence, (e) is arbitrary or capricious, or an abuse of discretion, or (f) is affected by any other substantial or material error of law. MCL 24.306; MSA 3.560(206). Because the appeal to the circuit court

is not *de novo,* this Court need not find the reviewing court's opinion clearly erroneous in order to reverse, GCR 1963, 517.1. *Longo v McIlmurray,* 115 Mich App 479, 487; 321 NW2d 701 (1982). Rather, we review the board's decision in the same limited manner as the circuit court.

Because the essence of this case is the board's interpretation of department regulations or standards, our review is limited to the question of whether that interpretation was affected by a substantial or material error of law.

In pertinent part, 1979 AC, R 408.12461(1) states:

"The employer shall provide and insure the usage of 'point of operation guards,' or properly applied and adjusted point of operation devices, on every production operation performed on a press."

1979 AC, R 408.12463(1), in relevant part, states:

"(1) Point of operation devices shall protect the operator by 1 of the following:

"(a) Preventing or stopping, or both, the normal stroking of a press if the operator's hands are inadvertently placed in the point of operation.

"(b) Withdrawing his hands if they are inadvertently located in the point of operation as the dies close, or preventing the operator from inadvertently reaching into the point of operation.

"(c) Preventing the operator from inadvertently reaching into the point of operation at all times.

"(d) Requiring application of both of the operator's hands to machine operating controls and locating the controls at a distance from the point of operation as will permit the slide to complete the downward travel or stop before the operator can reach into the point of operation with his hands.

"(e) Enclosing the point of operation before a press

stroke can be initiated, and maintaining this closed condition until the motion of the slide ceases.

"(f) Enclosing the point of operation before a press stroke can be initiated, so as to prevent an operator from reaching into the point of operation prior to die closure or prior to cessation of slide motion during the downward stroke."

Subsections (2)-(8) of the above rule illustrate examples of devices that fall within the ambit of each of the above provisions.

The specific definition of a point of operation device is found at 1979 AC, R 408.12404:

"(1) 'Device' means a press *control* or *attachment* that performs any one of the following functions:

"(a) Restrains the operator from inadvertently reaching into the point of operation.

"(b) Prevents normal press operation if the operator's hands are inadvertently within the point of operation.

"(c) Automatically withdraws the operator's hands if the operator's hands are inadvertently within the point of operation as the dies close. See R 408.12406(1) and (5), R 408.12407(7) and (9), R 408.12408(10), and R 408.12409(3)." (Emphasis added.)

The hearing referee found as fact that GMC did not provide a point of operation guard. Neither party disputes this finding. The hearing referee also found as fact that a press operator could not inadvertently reach the point of operation on GMC's KB-1 press because that point was too high and far away for the operator to reach. The KB-1's height from the floor to the edge of the die, or point of operation, was 5 feet 10 inches. However, the hearing referee also found as fact that the KB-1 press was not equipped with a device within the meaning of the department's standards, a serious violation of the department's regulations.

In his conclusions of law, the hearing referee relied upon the definition of device found in Rule 2404(1), *supra,* to reject GMC's claim that various features on the KB-1 press caused it to comply with the standards:

"The employer claims that press KB-1 had devices which restrained and/or prevented an operator's hand from inadvertently reaching within the point of operation. These devices are said to be the:

1. Automatic feed and discharge system;

2. Physical location and configuration of the operating controls;

3. Screens and discharge chute;

4. Gondola or tub;

5. Location of the point of operation; and

6. Speed of the machine.

"The employer argues that these 'devices' cause the point of operation to be too high and too far away for an operator's hand to inadvertently enter.

"The hearings judge finds that the employer has not provided and insured the use of properly applied and adjusted point of operation devices. The 'devices' in use by respondent are not *press controls* and *attachments* which restrain, prevent, or withdraw an operator's hand from inadvertently entering the point of operation, within the meaning of Rules 2461(1) and 2463. The employer's ' "devices" ' are simply features associated with the design and operation of a KB-1 mechanical power press. The standards in question were promulgated by the General Industry Safety Standards Commission to insure that the points of operation of all mechanical power presses within the State of Michigan are safeguarded. There is no exemption for presses having a die height of five feet, ten inches. Nor is there an exception for presses that have automatic feed and discharge systems, screens, discharge chutes, gondolas measuring 44 inches by 66 inches by 40 inches, or one of those located adjacent to storage areas." (Transcript references omitted. Emphasis added.)

The hearing referee further concluded:

"It may be true, as alleged by the employer, that an operator's hand cannot inadvertently enter the point of operation because it is 'just too high and too far away'. This simply means that in order to comply with Rule 2461(1), an employer need not safeguard the point of operation with a device, because a device is not needed. A device would be the method of guarding if it were possible for an operator's hand to inadvertently enter the point of operation. Also, as pointed out above, none of the features of this press are devices within the meaning of Rules 2461(1) and 2463."

"Therefore, since the employer has not safeguarded the point of operation of its mechanical power press with a guard or device, it is in violation of Rules 2461(1), 2462, and 2463."

The hearing referee also concluded that the department need not establish a hazard before issuing a citation. Compliance with the disputed standards were mandatory and GMC failed to comply with those standards.

On appeal to the Wayne County Circuit Court, GMC argued that the board's decision based upon the hearing referee's findings and conclusions should be reversed because (1) the bureau was required to prove the existence of a hazard as part of its prima facie case, (2) the press did contain a point of operation device, and (3) GMC did not know, or should not have known, of the existence of the violation. The circuit court did not address issues (1) and (3) because it found that the power press was equipped with a point of operation device. The court said the hearing referee wrongly concluded that only those devices enumerated in 1979 AC, R 408.12463, subds (2)-(8) could satisfy the standards and, because height of a press was not included, height of the point of operation could

not be considered a device. The court reasoned that because the height of the KB-1 press at issue did prevent an operator from inadvertently placing his or her hands or fingers near the point of operation the height of the machine was a device under 1979 AC, R 408.12463(1)(c), *supra.*

In construing administrative rules, the rules of statutory construction apply. MCL 24.232; MSA 3.560(132); *Johnston v Billot,* 109 Mich App 578, 589; 311 NW2d 808 (1981), *lv den* 414 Mich 955 (1982). Therefore, if an agency rule or standard is unambiguous on its face, no interpretation is necessary. This Court must give effect to the agency's intention as clearly expressed in its regulation. *Johnston v Billot, supra.* Only where the agency rule is ambiguous should a reviewing court apply a reasonable construction which attempts to accomplish the purpose of the agency rule. 109 Mich App 589-590.

We find that the language of the department standards at issue here is unambiguous on its face. "Device" is defined as a "press control" or "attachment". 1979 AC, R 408.12404. Whether the features of GMC's KB-1 did prevent an operator from inadvertent contact with the KB-1's point of operation is immaterial. Where a statute or standard contains a definition of a term, that definition is binding on the courts. *Erlandson v Genesee County Employee's Retirement Comm,* 337 Mich 195, 204; 59 NW2d 389 (1953); *LeGalley v Bronson Community Schools,* 127 Mich App 482; 339 NW2d 223 (1983).

The record in this case supports the hearing referee's, and thus the board's, finding that GMC's KB-1 press did not have an attachment or press control device that prevented an operator from inadvertently touching the point of operation. The

board did not err by so finding. Thus, the reviewing circuit court exceeded its reviewing function by holding that the KB-1's height, because it prevented an operator's inadvertent touching of the point of operation, was a device within the meaning of the applicable agency standards.

We note that we agree with the circuit court that the devices illustrated in Rule 12463, subds (2)-(8) are not exclusive. However, we disagree with the circuit court's conclusion that the hearing referee or board made such a finding based upon the principle of *expressio unius est exclusio alterius*—the express mention of one thing implies the exclusion of other similar things. *Stowers v Wolodzko,* 386 Mich 119, 133; 191 NW2d 355 (1971). Instead, the hearing referee relied upon the express definition of "device" given in the standards to form his conclusions of law.

We do not decide the other issues raised by GMC in its judicial review of the board's decision. We only reverse the circuit court's vacation and dismissal of the department's citation on its finding that the KB-1 press did have a device within the meaning of the department's standards.

Reversed and remanded.