LONGO v McILMURRAY

Docket No. 57246. Submitted January 13, 1982, at Detroit.—Decided
     April 22, 1982. Leave to appeal applied for.

Mighty Phantom, a race horse owned by William Longo, finished
     in first place and Happy Sharon, a race horse driven by Waldo
     McIlmurray, finished in second place in a harness race run at
     Wolverine Raceway. McIlmurray filed a claim of interference
     against the driver of Mighty Phantom. The race judges affirmed
     the results of the race. McIlmurray thereafter appealed the
     decision to the office of the racing commissioner for the State of
     Michigan. The commissioner reversed the order of the race and
     placed Happy Sharon first and Mighty Phantom second. Longo
     sought and obtained a rehearing before the office of the racing
     commissioner. The commissioner affirmed his previous order.
     Longo appealed the decision to the Wayne Circuit Court. The
     court, Henry J. Szymanski, J., entered an order reversing the
     order of the racing commissioner and reinstating Mighty Phan-
     tom in first place. McIlmurray appeals. *Held:*

The circuit court's decision reversing the racing commission-
     er's decision should be reversed. The record of the commission
     hearings supports the commissioner's finding that Mighty
     Phantom obtained an advantageous position due to the inter-
     ference and thus affected the outcome of the race. The circuit
     court, which was reviewing a cold record, overruled an agency
     decision even though the hearing officer was in a much better
     position to determine if the race was affected and had the
     power to make a decision independent of that of the race
     judges.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES
[1] [No reference]
[2] [No reference]
[3] 2 Am Jur 2d, Administrative Law § 541.
[4] 2 Am Jur 2d, Administrative Law § 550.
[5] 2 Am Jur 2d, Administrative Law § 683.
[6] 2 Am Jur 2d, Administrative Law § 656.
[7] 2 Am Jur.2d, Administrative Law §§ 769, 770.

1. Administrative Law — Horse Racing — Judges.

Horse race judges have supervision over all subordinate officials such as patrol judges and have authority to determine all questions of fact relating to a race, decide differences between parties to a race, investigate apparent or possible interference or rule violations, examine all parties connected with a race concerning such violations or complaints, determine results of every race contested before them and place the horses in order of their finish; where a question arises which may or may not be covered by the racing commission's rules or those of the United States Trotting Association, the judges must make the determination in conformity with justice and the best interests of racing (1979 AC, R 431.35[e][63][d]).

2. Administrative Law — Horse Racing.

An offending horse in a horse race may be placed behind all the unoffending horses in that heat or dash where the driver of the offending horse changed either to the right or left during any part of the race where another horse was so near to him that in altering his position he compelled the horse behind him to shorten his stride (1979 AC, R 431.45[o][149][a], 431.45[o][152]).

3. Administrative Law — Horse Racing.

A party aggrieved by a decision of a horse race judge is entitled to a review of the decision before the racing commissioner; an appeal is a request for the commission to investigate, consider and review any decisions or rulings of judges or officials of a race and may deal with placings and interpretations of the rules; the rules do not designate a standard of review for appeals to the racing commission (1979 AC, R 431.63[c][316], 431.31[a][3]).

4. Administrative Law — Horse Racing — Commissioner's Decision.

A party aggrieved by a decision of the horse racing commissioner may file a petition for review in the circuit court; a dispute over the placement of horses is a contested case within the meaning of the Administrative Procedures Act (MCL 24.203[3], 24.302, 24.303; MSA 3.560[103][3], 3.560[202], 3.560[203]).

5. Administrative Law — Circuit Courts.

A court should set aside a decision of an administrative agency when the decision is not supported by competent, material and substantial evidence on the whole record or where it is arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion (MCL 24.306[d], [e]; MSA 3.560[206][d], [e]).

6. ADMINISTRATIVE LAW — CIRCUIT COURTS.

   A court, when reviewing a decision of an administrative agency involving application of a rule of that agency, should give effect to the administrative agency's intention in enacting the rule where there is an ambiguity in an agency rule; the court should look to the object of the rule and the evil or mischief which it was designed to remedy and apply a reasonable construction which best accomplishes the rule's purpose.

7. ADMINISTRATIVE LAW — COURT OF APPEALS.

   The Court of Appeals reviews an administrative agency's decision to determine if it is supported by competent, material and substantial evidence where a decision of an administrative agency is first appealed to the circuit court and then the circuit court's ruling is appealed to the Court of Appeals (Const 1963, art 6, § 28; MCL 24.285; MSA 3.560[185]).

*Neil H. Fink* and *David S. Steingold,* for petitioner.

*Charles A. Palmer,* for respondent.

Before: CYNAR, P.J., and M. J. KELLY and D. C. RILEY, JJ.

CYNAR, P.J. Respondent appeals by right from a Wayne County Circuit Court order reversing an April 11, 1980, Michigan racing commissioner's order which had disqualified petitioner's horse, Mighty Phantom, from first place and placed the horse second in a harness race run at Wolverine Raceway on July 14, 1979.

The dispute arose out of an incident during the fifth race whereby Mighty Phantom, who was running in third place and "caught" against the rail, moved suddenly to the outside so as to cut in front of the then fourth-place horse, Happy Sharon, driven by the respondent, forcing the latter horse farther to the outside to avoid a

collision. Mighty Phantom finished first and Happy Sharon came in second.

The respondent filed a claim of interference against Mighty Phantom, which claim was denied by the race judges. The respondent appealed to the racing commissioner.

A hearing was held on August 30, 1979, following which the hearing officer recommended that the decision of the race judges be overruled. The racing commissioner accepted the hearing officer's recommendation and reversed the order of placement of the two horses involved. A rehearing was held, but the decision of the hearing officer and the racing commissioner remained the same.

Petitioner, owner of Mighty Phantom, appealed the racing commissioner's decision to the Wayne County Circuit Court. The circuit court ruled that there was adequate evidence for a finding of interference but not for a finding that the interference affected the outcome of the race. The court stated in its opinion that the hearing officer found the outcome affected by the interference simply because the presiding judge, Fred Greenly, relied on his knowledge of the horses' relative conditions as indicated by their past performances in ruling that the race was not affected. The court noted that none of the witnesses who were in the best position to view the interference would testify that the race was affected by the interference. The court held that it would not reverse the race judges' decision absent a clear abuse of their discretion and concluded that no abuse of discretion was shown by the record.

The respondent now brings this appeal, claiming that the circuit court erred by reinstating the decision of the race judges. The respondent contends that the circuit court held the racing com-

missioner to an improper standard of review and placed an improper burden of proof on the victim of a rule infraction (requiring, in effect, that the victim of an interference bear the burden of showing that the outcome of the race was thereby affected).

Several rules promulgated by the racing commissioner pursuant to his authority under § 6 of the racing law of 1959, MCL 431.36; MSA 18.966(6), are pertinent to the instant case.

The Michigan Administrative Code, 1979 AC, R 431.35(e) provides in part that race judges have supervision over all subordinate officials such as patrol judges and have authority to determine all questions of fact relating to the race, decide differences between parties to the race, investigate apparent or possible interference or rule violations, examine all parties connected with a race concerning such violations or complaints, determine results of every race contested before them and place the horses in order of their finish. 1979 AC, R 431.35(e)(63)(d) provides that where a question arises which may or may not be covered by the racing commission's rules or those of the United States Trotting Association, the stewards (or judges) must make the determination in conformity with justice and the best interests of racing.

The infraction complained of in this case concerns 1979 AC, R 431.45(o)(149)(a) which provides that a driver cannot "change either to the right or left during any part of the race when another horse is so near him that in altering his position he compels the horse behind him to shorten his stride * * *". In case of such a violation, "the offending horse may be placed behind all the unoffending horses in that heat or dash * * *". 1979 AC, R 431.45(o)(152).

In light of the above, the race judges had the authority to reorder the placement of Happy Sharon and Mighty Phantom. The aggrieved party of the race judges' decision in this case, Happy Sharon's driver, the respondent was entitled to a review of the decision before the racing commissioner. 1979 AC, R 431.63(c)(316). Under the commission's rules, an appeal is defined as "a request for the commission to investigate, consider and review any decisions or rulings of judges or officials of a meeting (a race)", and may deal with placings and interpretations of the rules. 1979 AC, R 431.31(a)(3). The rules do not designate a standard of review for appeals to the racing commissioner.

Since the statute concerning the racing commissioner does not provide for a special judicial review proceeding, the party aggrieved by the racing commissioner's decision can file a petition for review in the circuit court pursuant to § 103 of the Administrative Procedures Act of 1969. MCL 24.303; MSA 3.560(203), MCL 24.302; MSA 3.560(202). The dispute over the placement of the horses does appear to be a contested case within the meaning of the Administrative Procedures Act. MCL 24.203(3); MSA 3.560(103)(3). The act provides that a court must set aside an agency decision when it is not supported by competent, material and substantial evidence on the whole record or when it is arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion. MCL 24.306(d), (e); MSA 3.560(206)(d), (e).

The crux of the problem in this case initially concerns the division of authority between the race judges and the racing commissioner. The circuit court judge reversed the racing commissioner's ruling under the theory that the commissioner

could not reverse the race judges' decision absent a clear abuse of discretion and the record did not demonstrate such an abuse of discretion.

Assuming that the race judges can change the placing of a race only if they find that the interference affected the outcome of the race, the immediate question is whether the commissioner may conduct a *de novo* review or whether he is essentially bound by the judges' finding that the outcome was not affected by the interference. Under the rules, the judges are given the authority to determine all questions of fact relating to the race and to determine the results of every race and place the horses in order of their finish. 1979 AC, R 431.35(e)(64). However, when the judges' decision is appealed to the racing commissioner, the commissioner may investigate, consider and review that decision. 1979 AC, R 431.31(a)(3). Thus, it seems that the commissioner is empowered by the commission's own rules to hear testimony and thereby conduct a *de novo* review as he did in the instant case. If the commissioner is so empowered, it would make little sense to argue that the commissioner is bound by the findings of the race judges.

Where there is ambiguity in an agency rule, a court must give effect to the administrative agency's intention in enacting the rule. The court must look to the object of the rule and the evil or mischief which it is designed to remedy and apply a reasonable construction which best accomplishes the rule's purpose. *Johnston v Billot,* 109 Mich App 578; 311 NW2d 808 (1981).

There is an ambiguity, or perhaps more accurately an omission, in the rule concerning the race judges' authority to conclusively determine the facts. We think that the above rule of statutory

construction can be used as a guide. The rule also states that the race judges have supervision over all subordinate officials. Consequently, we construe the rules as intending to give the race judges authority to determine the facts only at the race meeting, and not for purposes of appeal, especially when the definition of an appeal is considered. The commissioner should be free to make an independent decision after considering all of the testimony before him.

That the commissioner is empowered to investigate the decisions of race judges implies that testimony may be taken. If no new testimony is taken and the commissioner has no facts to consider which were not before the race judges, a reversal of the race judges' decision would in practice amount to a ruling that the judges either clearly erred or abused their discretion. However, the nature of the hearing before the racing commissioner appears to give the commissioner the power to make an independent determination. This is essentially a review *de novo.* Thus, the circuit court should only have considered whether the commissioner's decision was supported by competent, material and substantial evidence on the whole record. MCL 24.306(d); MSA 3.560(206)(d).

At the first commission hearing, the patrol judge, Pat Hall, offered no opinion on whether the interference he observed and called in to the race judges affected the outcome of the race. The three judges talked to Hall and both drivers involved and reviewed the race film before they decided that the interference, if any, did not affect the race. Presiding Judge Greenly did agree that Mighty Phantom would have had to stay at the rail until Happy Sharon and one other horse passed him had the driver not jerked the horse out

in front of Happy Sharon. This was viewed as a two and one-half length gain for Mighty Phantom. One of the other judges, Frank Meharg, had also testified that the outcome was not affected. The two judges who testified at the hearing would not take a position on whether or not there was even an interference. Neither driver involved, nor the other driver who witnessed the interference, would take a position on whether the race was affected.

The circuit court found that there was sufficient evidence that an interference occurred and neither party attacks that part of the court's ruling in this appeal. The court further ruled that there was insufficient evidence to show that the outcome was affected. In so ruling, the circuit court erred in stating that the racing commissioner's reordering of the placement was based entirely on Greenly's testimony that he did not feel that the race was affected because of the superior condition of Mighty Phantom. As the petitioner points out, this testimony by Greenly was given during the rehearing after the commissioner had already ruled that the race's outcome was affected. Before the rehearing, the hearing officer's decision simply stated that it was hard to believe that the race's outcome was not affected.

When an agency decision is first appealed to the circuit court, the Court of Appeals, hearing an appeal from the circuit court, also reviews the agency's decision to determine if it is supported by competent, material and substantial evidence. MCL 24.285; MSA 3.560(185); Const 1963, art 6, § 28. The appeal to the circuit court in the instant case is not *de novo*. Therefore, GCR 1963, 517.1 is not applicable and this Court need not consider whether the circuit court's decision was clearly erroneous. Compare, *Dixon v Ford Motor Co,* 402

Mich 315, 319; 262 NW2d 666 (1978) (clearly erroneous standard applied because an appeal to circuit court from the Civil Rights Commission constitutes a trial *de novo).*

The circuit court's decision reversing the racing commissioner should be reversed. The record of the commission hearings supports the commissioner's finding that Mighty Phantom obtained an advantageous position due to the interference and thus affected the outcome of the race.

As to the question of who must bear the burden of proof on whether the outcome of the race was affected by the interference, the hearing officer's opinion did not expressly state that it was placing the burden of proof on the interfering party or creating a rebuttable presumption in favor of the victim of the interference. The opinion merely stated that "[w]hen the interfering and objecting horses finished first and second in a race, it is difficult, if not impossible, to say that the outcome was not affected even though interference took place and the interfering horse obtained an advantageous position because the interference took place". It then concluded that "[w]hen the interfering horse and the objecting horse finish first and second and the interfering horse has received an advantageous position due to the interference, in this case having the rail with the objecting horse parked on the outside throughout the remainder of the race, then the judges must determine that the outcome of the race was affected and take the necessary action".

We do not regard the holding of the hearing officer as establishing a presumption in favor of the offended horse. Instead, we view it as interpreting the rule concerning the placing back of an interfering horse, 1979 AC, R 431.45(o)(152), to

mean that the judge can only place a horse back when they feel the outcome of the race was affected and that, under the circumstances of the instant case, the outcome was affected. It should be remembered that the racing commissioner saw virtually everything which the race judges saw, since the hearing officer viewed the videotape and the judges had a no more advantageous view of the interference or of the race. The only witnesses the judges interviewed and who also testified before the commissioner did not have opinions on the effect of the interference concerning the race's outcome. Therefore, the circuit court, which was reviewing a cold record, was overruling an agency decision where the hearing officer was in a much better position to determine if the race was affected and had the power to make a decision independent of that of the race judges. There was competent, material and substantial testimony on the record to support the commissioner's ruling that the race was affected.

Respondent, the driver of Happy Sharon, makes an additional argument that the ruling of the circuit court was improper because of the failure to join the owner of Happy Sharon as a necessary party under GCR 1963, 205.1. Because of our reversal of the circuit court order, this issue is moot.

The order of the circuit court is reversed for the above-stated reasons, and the order of the racing commissioner is reinstated.