**Dr. Gayle V. NELSON, Appellee,**

v.

**SOUTH DAKOTA STATE BOARD OF DENTISTRY, Appellant.**

**Nos. 16848, 16859.**

Supreme Court of South Dakota.

Argued May 21, 1990.

Decided Jan. 2, 1991.

Thomas J. Welk and Michael S. McKnight, Sioux Falls, for appellee.

John W. Bastian, Deputy Atty. Gen., Pierre, for appellant.

STEELE, Circuit Judge.

The South Dakota State Board of Dentistry (Board) appeals from a circuit court judgment reversing Board's final order in a disciplinary proceeding. We reverse and reinstate Board's final order.

## FACTS AND PROCEDURAL HISTORY

Dr. Gayle Nelson (Dr. Nelson) is a licensed dentist in Sioux Falls, South Dakota, specializing in the dental treatment of children and adolescents. Board brought disciplinary proceedings against Dr. Nelson, alleging that between January 1984 and November 1987, he allowed assistants to administer and monitor nitrous oxide sedation in violation of certain administrative rules. In June 1988, there were three dentists and six assistants in Dr. Nelson's office. Although it is unclear from the record, the office apparently included at least one dentist and several assistants during the time period in question.

Dr. Nelson has used nitrous oxide in his practice for sedation purposes for several years. He is authorized to do so pursuant to ARSD 26:43:04:12. Nitrous oxide is mixed with oxygen and administered by placing a mask over the nose and mouth of the patient. The percentage of nitrous oxide can be controlled; the higher the percentage of nitrous oxide to oxygen, the higher the sedation properties of the mixture. A dentist examines a patient and obtains a medical history before treatment begins. Nitrous oxide is usually administered unless a notation is made in the patient's file by the dentist.

Any one of Dr. Nelson's dental assistants actually places the mask on the patient and operates the dispenser. Although the level of the nitrous oxide-oxygen mixture to be administered is usually determined by the dentist, the assistants on some occasions increase the dosage on their own volition. A dentist, although always in the room or in an adjoining office, does not always stand in proximity to the patient when nitrous oxide is being administered. The patient is usually monitored by an assistant.

Dr. Nelson uses nitrous oxide for "conscious sedation," as that term is defined by ARSD 20:43:04:10; that is, for purposes of controlling pain or apprehension, or both, without rendering the patient unconscious.

At the disciplinary proceeding, the only witness Board called was one of Dr. Nelson's assistants. She testified that the assistants usually placed the nitrous oxide mask on the patients; that a dentist was not always in the immediate vicinity of the patient; that the assistant on rare occasions altered the mixture of the nitrous oxide and oxygen on her own volition and usually monitored the patient. Dr. Nelson testified that nitrous oxide can cause such adverse reactions in children as nausea, upset stomach, and vomiting, although he has never encountered a serious problem with side effects in patients.

Board determined that the administration of nitrous oxide was a procedure which may not be delegated under ARSD 20:43:04:05.01(3), and that Dr. Nelson did delegate that procedure in violation of the rule. As a result, Board suspended Dr. Nelson's license indefinitely.

Dr. Nelson appealed Board's decision to the circuit court, which reversed Board, holding that *Appeal of Schramm*, 414 N.W.2d 31 (S.D.1987) was dispositive because Board presented no expert testimony that the procedure employed by Dr. Nelson in administering nitrous oxide resulted in unacceptable patient care. Board appeals the circuit court's decision contending that *Appeal of Schramm* does not apply to the facts of this case. By notice of review, Dr. Nelson seeks to reverse Board's decision on the alternative grounds that Board's findings of fact and conclusions of law are arbitrary and capricious and are affected by error of law.

We hold that the circuit court erred in holding that *Appeal of Schramm* is dispositive of this case; the decision of the Board was not arbitrary, capricious, or affected by error of law.

### ISSUE ONE

WHETHER EXPERT TESTIMONY WAS REQUIRED TO SHOW THAT DR. NELSON ENGAGED IN OR PERMITTED THE PERFORMANCE OF UNACCEPTABLE PATIENT CARE?

 In *Appeal of Schramm, supra,* a dentist was brought before Board after several complaints were registered by other dentists alleging that Dr. Schramm rendered inadequate treatment to his patients. Board held that in 13 of 15 cases inadequate care had been rendered, and Dr. Schramm's license was suspended indefinitely. Board used its own expertise (five of seven members are dentists) in determining that Dr. Schramm's patient care was unacceptable. There was no expert testimony presented about the standard of patient care in the community or that Dr. Schramm had negligently or intentionally violated that standard. Although SDCL 36–6–8.4 authorizes Board to establish competency standards by rule, it had not done so.

The circuit court held that expert testimony was not necessary to establish a standard of care or its violation and Dr. Schramm appealed. We held that when competency standards are not set by rule, the tort standard (that degree of skill ordi-

narily possessed by dentists of good standing engaged in the same type of practice in the same or similar locality) applies. We further held that experts must testify about this standard and its violation so that an appellate court can effectively review the record.

Board's notice of hearing in this case stated:

This hearing is held to determine the following issues in accordance with SDCL 36–6–44(3):

Whether the practitioner has engaged in or permitted the performance of unacceptable patient care by himself or by auxiliaries working under his supervision due to his deliberate or negligent act or acts or failure to act, to-wit: whether the practitioner permitted dental assistants to administer and/or monitor nitrous analgesia during a period of time from on or about January 11, 1984 to on or about November 18, 1987.

The first phrase of the notice was a verbatim recital of 36–6–44(3); the second phrase framed the factual issue.

ARSD 20:43:04:05.01(1) provides:

*Procedures that may not be delegated.* Procedures that may not be delegated by a dentist to dental auxiliaries include the following: (3) ... the administration of analgesia, except for topical anesthetic ...

The issue is not whether Dr. Nelson was negligent in the procedure he followed in the administration of nitrous oxide, but whether he violated ARSD 20:43:04:05.01(3) in delegating its administration to dental assistants. The standard alleged to have been violated has been set by rule and the only issues are the construction of the rule and whether Dr. Nelson's conduct violated it; negligence is not relevant. Therefore, *Appeal of Schramm* does not apply to the facts of this case.

### ISSUE TWO

WHETHER THE BOARD'S DECISION WAS ARBITRARY AND CAPRICIOUS OR AFFECTED BY ERROR OF LAW?

The dispute in this case involves the construction of ARSD 20:43:04:05.01(3), *supra.*

Dr. Nelson contends that the meaning of the term "analgesia" as used in the rule is ambiguous; that the ambiguity should be construed in his favor; that Board's interpretation of the meaning of the term "analgesia" is contrary to the evidence; and that its decision is arbitrary, capricious or affected by error of law, contrary to SDCL 1–26–36.

Board construed the term "analgesia" to include the administration of nitrous oxide to a patient, regardless of the dosage. Dr. Nelson asserts that the term does not refer to the administration of a substance, but to the state of sedation where there is insensibility to pain without loss of consciousness. He contends that the rule does not prohibit delegation of the administration of nitrous oxide as long as: 1) the dosage of nitrous oxide is below the level at which a state of analgesia is achieved, and 2) the attending dentist exercises the direct supervision and full responsibility required by ARSD 20:43:04:05, which deals with delegable procedures.

The Board concluded that nitrous oxide is an analgesic drug, and that the term "analgesia" as used in the rule is a generic term which includes the administration of nitrous oxide in any dosage; therefore, the administration of nitrous oxide is a non-delegable procedure.

■ The construction of an administrative rule is a question of law which is fully reviewable by the court without deference to the agency determination. *Appeal of Schramm, supra; Permann v. South Dakota Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987); *Coe v. Bd. of Regents of the Univ. of Wis.*, 140 Wis.2d 261, 409 N.W.2d 166 (Wisc.App.1987).

Although the final construction of a rule is a question of law, an agency is usually given a reasonable range of informed discretion in the interpretation and application of its own rules when the language subject to construction is technical in nature or ambiguous, or when the agency interpretation is one of long standing. *Matter of Southeastern Minn. Cit. Action Coun.*, 359 N.W.2d 60 (Minn.App.1984); *Iowa Fed. of Labor v. Dept. of Job Serv.*, 427 N.W.2d 443 (Ia.1988); *Matter of Stone Creek Channel Improvements*, 424 N.W.2d 894 (N.D.1988).

■ Administrative rules are subject to the same rules of construction as statutes. *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982).

■ Where there is an ambiguity in an agency rule, a court must give effect to the agency's intention in promulgation of the rule, and must look to the object of the rule and the evil or mischief which it is designed to remedy and apply a reasonable construction which best accomplishes the purpose of the rule. *Longo v. McIlmurray*, 115 Mich.App. 479, 321 N.W.2d 701 (1982). The purpose of the rule must be determined from the rule as a whole, as well as other rules relating to the same subject. *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D.1987).

When a statute or rule does not define a term, it should be construed according to its accepted usage and a strained, unpractical, or absurd result should be avoided, SDCL 2–14–1; *Iowa Fed. of Labor v. Dept. of Job Serv., supra.*

■ With the rules of construction in mind, we examine ARSD 20:43:04:05.01(3). The rule prohibits delegation of "The injection of any medication; the administration of analgesia, except for topical anesthetic; and the removal of blood by any means; . . . ." This sentence addresses procedures which are intrusive to the body or involve sedation or both. It mandates that the dentist perform the procedures, except the administration of topical anesthetic. The purpose of the rule is obviously to protect the patient from harm which may be caused by the performance of those procedures by an unqualified person.

Companion rules address the qualifications needed to administer nitrous oxide. ARSD 20:43:04:10 defines "conscious sedation" as "the use of drugs for controlling pain or apprehension, or both, without rendering a patient unconscious."

Dr. Nelson contends that he uses nitrous oxide only for controlling apprehension in

children and that the dosages administered do not sedate the patient to a state of analgesia, i.e., insensibility to pain. However, ARSD 20:43:04:12 requires that before a dentist uses nitrous oxide, even in conscious sedation, he must complete a university course of at least 16 hours or have used nitrous oxide in his practice for three years prior to the effective date of the rule.

ARSD 20:43:04:05 * concerns procedures which may be delegated. At the time of this action the last sentence of the rule stated: "Procedures that may be delegated include the administration of topical anesthetic." That sentence, considered in light of ARSD 20:43:04:05.01(3) and the other cited rules, allows but one conclusion: that the only sedation or medication which may be administered in a dentist's chair by an assistant, whatever the dosage, is a topical anesthetic.

Dr. Nelson is correct that the narrow medical definition of the term "analgesia" is "insensibility to pain without loss of consciousness." Webster's New Collegiate Dictionary, 1976 ed. This definition implies a state of sedation rather than the administration of a substance.

However Board, which includes five dentists, used its expertise in concluding what the term "analgesia" means or should mean to a dentist. Board's memorandum opinion, (which was incorporated into the findings of fact and conclusions of law) stated that the term "analgesic" in the dentistry profession has been synonymous with nitrous oxide for many years. Findings of fact must be based on evidence in the record, but construing the meaning of a term in a rule is a matter of law. In matters of construction, a board should be allowed a reasonable range of informed discretion, as long as its construction is reasonable and not inconsistent with the rules.

The term "analgesia" contained in ARSD 20:43:04:05.01(3) is susceptible of more than one interpretation by reasonable people, and therefore is ambiguous. *State ex rel. Staples v. Young*, 142 Wis.2d 348, 418 N.W.2d 333 (Wis.App.1987). As is true

* ARSD 20:43:04:05 has since been amended. 14

with most medical terms, it is technical in nature. In this case, Board's construction is consistent with the rules, and Board is entitled, within reasonable limits, to construe a term which is ambiguous or technical.

Dr. Nelson argues that because his license to practice dentistry was subject to suspension, the rules are penal in nature and should be strictly construed in his favor. A statute or rule is penal in nature if a forfeiture is imposed for a transgression and where the extent of the liability imposed is not measured or limited by the act or omission. *Hancock v. State*, 213 Neb. 807, 331 N.W.2d 526 (1983). The rule of strict construction of a penal statute has been abrogated in South Dakota, at least so far as Title 22 is concerned. SDCL 22–1–1 states:

> The rule of the common law that penal statutes are to be strictly construed has no application to this title. All its criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice.

We see no reason to depart from this statutory standard in the construction of administrative rules which may have a penal effect. We are acutely aware that a professional license, reputation, and livelihood are at stake whenever suspension is a possibility. Under those circumstances, a professional is due every consideration. However, those considerations should not lead to a construction so strict that the object and purpose of a rule are thwarted. To give effect to the object and purpose of the rule in question, the only fair construction of the term "analgesia" is the one determined by Board.

We cannot conclude that any of Board's findings were clearly erroneous, or that its decision was arbitrary, capricious, or affected by error of law; therefore, the trial court's judgment is reversed and remanded for reinstatement of Board's order.

MILLER, C.J., and MORGAN and SABERS, JJ., concur.

SDR 118, effective March 24, 1988.

HENDERSON, J., concurs with writing.

STEELE, Circuit Judge, for WUEST, J., disqualified.

HENDERSON, Justice (concurring).

The State Board of Dentistry ordered that the dental license of Dr. Nelson be suspended for an "indefinite length of time." Further, that "he pay all costs of the proceedings and the prescribed reinstatement fee; and upon such payment the dental license of Dr. Nelson shall be reinstated." This was dated August 31, 1988. The last brief was filed herein on February 5, 1990. This case was argued on May 21, 1990.

It appears that justice moved very slowly in this case.

There are some facts, other than those expressed in the majority opinion, which, in my opinion, should be mentioned. Nearly all of Dr. Nelson's patients were toddlers and very young children. Some of these children had a reaction, while receiving nitrous oxide, which is manifested by irregular breathing, nausea, sweating, and a flushed or colorless face. In Dr. Nelson's office, nitrous oxide was often administered to a child without ever checking with Dr. Nelson. A dental assistant would rely, upon the record, to determine if nitrous oxide should be administered. And the level of nitrous oxide, who would then determine same? Again, a dental assistant made a determination based upon the age and apprehension of the child. Patients were seated and given nitrous oxide before being seen by the dentist. This would happen when a patient, as an example, was four years old and had never previously been administered nitrous oxide. Dr. Nelson had 14 chairs in his operatory with four of them equipped with nitrous oxide units. There were two portable nitrous oxide units available as a backup.

Unfortunately, this portrayed a rather commercial operation as distinguished from a professional standard of care. In my opinion, the quest ultimately became the making of money which resulted, as the Board found, in "unacceptable patient care." I commend this Board for upholding a professional stance to the general public and for finding that there are skills that simply may not be delegated by a dentist to dental auxiliaries. The South Dakota State Board of Dentistry upheld its duty to protect the public and I would, in all things, bless their action.

Under ARSD 20:43:04:05.01(3), the rules absolutely prohibited a dentist from delegating to dental assistants the administration of analgesia except for topical anesthetic.