Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 
In The Matter Of The Grievances of
LENN T. ISLAND, et al.,
Petitioners and Appellees,
v.
DEPARTMENT OF CORRECTIONS,
Appellant. 
South Dakota Supreme Court
Appeal From The First Judicial Circuit, Bon Homme County, SD
Hon. Paul J. Kern, Judge
#19182 - Reversed 
Douglas P. Cummings, Jr., Sioux Falls, SD
Attorney for petitioners and appellees. 
Mark Barnett, Attorney General
Charles D. McGuigan, Assistant Attorney General, Pierre, SD
Attorneys for appellant. 
Argued Nov 30, 1995; Opinion Filed Mar 20, 1996 
GILBERTSON, Justice. 
[Â¶1] The South Dakota Career Service Commission (Commission) upheld the South Dakota Bureau of Personnel's (BOP) decision to deny Springfield Correctional Facility (Springfield Facility) officers' grievances regarding pay raise requests. Springfield Facility correctional officers appealed to the circuit court which reversed the decision of the Commission. We reverse the decision of the circuit court and remand to the circuit court with instructions to reinstate the Commission's decision. 
FACTS AND PROCEDURE 
[Â¶2] Between July 1 through October 31, 1993, twenty-three correctional officers at the South Dakota State Penitentiary (State Penitentiary) in Sioux Falls voluntarily resigned. This represented a 25% turnover rate. During that same period of time, the Springfield Facility reported a 20% turnover rate but with only one voluntary resignation.{1} Warden Joe Class requested an increase in correctional officers' salaries at the State Penitentiary to ease what the Department of Corrections (DOC) perceived to be an unacceptably high turnover rate at that facility. DOC did not have the funds within its budget to meet this request. Correctional officers at Springfield, learning of Class' request, requested similar salary adjustments for themselves. 
[Â¶3] BOP conducted a labor market study and approved Class' request regarding the Sioux Falls correctional officers. BOP concluded from the study that labor market conditions in Sioux Falls supported the salary adjustment. The study showed that statewide, the average salary for similar positions was $8.35/hour. In Minnehaha County, the site of [96 SDO 174] the State Penitentiary, the average salary was $9.37/hour. In Yankton County the average salary was $8.31/hour.{2} The average salary of correctional officers at the State Penitentiary was $8.28/hour, lower than the market area average. The average salary of correctional officers at the Springfield Facility was $8.42/hour, higher than the market area average. 
[Â¶4] Then-Governor Walter D. Miller requested introduction of Senate Bill 263 into the 1994 legislative session to fund the salary increases of the Sioux Falls correctional officers. Springfield correctional officers and a legislator from that district attempted to include the Springfield correctional officers in the senate bill. They failed in that effort. The bill which ultimately passed provided $260,550 to DOC for salary increases for the Sioux Falls officers. The raise became effective retroactively November 22, 1993. After the salary adjustment, the average salary of correctional officers at the State Penitentiary rose to $8.80/hour, still lower than the market area average. The average salary of correctional officers at the Springfield Facility during this same period was $8.51/hour, reflecting normal salary increases, still higher than the market area average of Yankton County. 
[Â¶5] Sixty-eight correctional officers of the Springfield Facility brought grievances requesting a similar increase in their salaries. Their grievances were denied at each stage of the grievance process, including before the Springfield Facility supervisors, the Springfield Facility Superintendent, DOC, BOP, and following a hearing before the Commission. No one denied that the Springfield correctional officers did not perform similar duties or receive similar training as the Sioux Falls correctional officers; in fact, these officers were interchangeable as evidenced by the fact that Springfield officers were called to assist officers at the State Penitentiary during the May 1993 riot. The Springfield officers appealed to the circuit court which reversed the Commission's decision, finding the phrase "state's ability to pay" within ARSD 55:01:18:20 had not been interpreted according to its plain meaning and denial of a similar increase to the Springfield Facility officers violated the "equal pay for equal work" provision of SDCL 3-6A-29. DOC appeals. 
STANDARD OF REVIEW 
[Â¶6] Our standard of review of administrative findings of fact and conclusions of law is well settled and was discussed at length in Permann v. South Dakota Dep't of Labor, 411 NW2d 113, 115-17 (SD 1987). In Permann, we held "[w]hen the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable. When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous." Id. at 116 (citations omitted); SDCL 1-26-36. 
ANALYSIS AND DECISION 
[Â¶7] DOC argues the circuit court erred in reversing the Commission's decision upholding BOP's denial of Grievants' requested pay raises. The circuit court determined DOC had failed to consider the "state's ability to pay salaries of employees in like classes" factor of ARSD 55:01:18:20 in accord with its plain meaning.{3} The circuit [96 SDO 175] court further held that denying the salary increases to Grievants violated SDCL 3-6A-29 which provides "[t]he career service commission shall have authority, pursuant to chapter 1-26, to adopt rules for a statewide pay system which assures the principle of equal pay for equal work applying to positions existing in the career service." 
[Â¶8] Interpretation of an administrative rule presents a question of law requiring de novo review. We discussed our review of administrative rules at length in Nelson v. South Dakota State Bd. of Dentistry, 464 NW2d 621 (SD 1991). In Nelson, we stated that: 


The construction of an administrative rule is a question of law which is fully reviewable by the court without deference to the agency determination. Although the final construction of a rule is a question of law, an agency is usually given a reasonable range of informed discretion in the interpretation and application of its own rules when the language subject to construction is technical in nature or ambiguous, or when the agency interpretation is one of long standing. Administrative rules are subject to the same rules of construction as statutes. Where there is an ambiguity in an agency rule, a court must give effect to the agency's intention in promulgation of the rule, and must look to the object of the rule and the evil or mischief which it is designed to remedy and apply a reasonable construction which best accomplishes the purpose of the rule. The purpose of the rule must be determined from the rule as a whole, as well as other rules relating to the same subject. When a statute or rule does not define a term, it should be construed according to its accepted usage and a strained, unpractical, or absurd result should be avoided. 
Id. at 624. (citations omitted). 
[Â¶9] DOC claims BOP has a long-standing interpretation of ARSD 55:01:18:20 which permits pay raises at one institution within a department. DOC claims their interpretation is neither inconsistent with the administrative rule nor the salary policy of the State of South Dakota. DOC argues that since the salaries of all of the State's correctional officers are within the N-11 pay grade range, SDCL 3-6A-29 is not violated. Grievants claim the Board's interpretation of ARSD 55:01:18:20 is in direct contravention of the statute.{4} Our review of the entire record convinces us the pay raises to the Sioux Falls correctional officers were made within the authority under ARSD 55:01:18:20 and not violative of SDCL 3-6A-29. 
[Â¶10] SDCL 3-6A-29 grants authority to the Commission to adopt rules assuring that "equal pay for equal work" applies to existing career service positions. This it has done. All State employees with the job classification of "correctional officer" are N-11 pay grade employees. In 1993, this pay grade ranged [96 SDO 176] from $7.26/hour to $10.88/hour. All of the grievants herein are paid within this range. The salaries of the Sioux Falls correctional officers who received a pay raise also fall within this range. There are differences in individual salaries and those differences arise from a number of factors such as longevity, performance (merit increases), and the factor at issue here, labor market conditions. Labor market conditions may be affected by, among other things, cost of living in a given location and competing employers. However, the position of correctional officer within the State of South Dakota Career Service employee classification system, with the same listing of duties regardless of geographic assignment, is paid within the N-11 range. This is in accord with the statutory requirement. 
[Â¶11] Further, the plain language of ARSD 55:01:18:20 provides authority for the salary adjustments made at the Sioux Falls facility in this case wherein it permits salary adjustments within the pay range based on one or any combination of enumerated factors, including labor market conditions. Based on information gleaned in exit interviews with recent resignees, as well as the number of employees resigning{5} and the difficulty in recruiting replacements,{6} DOC and BOP determined current labor market conditions in Sioux Falls warranted a salary increase to recruit and retain correctional officers at the Sioux Falls Penitentiary. DOC Secretary DeLano indicated to Governor Miller this was a "critical need" of the Department. 
[Â¶12] BOP Commissioner Pam Roberts testified at the Commission hearing that, unlike the situation in Sioux Falls, a salary increase for the Springfield correctional officers was not similarly justified by ARSD 55:01:18:20. Secretary DeLano testified that the recruitment problems DOC was experiencing in Sioux Falls did not appear in the Springfield Facility because "there's not a whole lot of jobs around [the Springfield area], so I think the Springfield Correctional Facility is one of the better employers." The Commission found the labor market conditions did not justify a similar increase in salary for the Springfield correctional officers. 
[Â¶13] The circuit court, in part, based its order reversing the Commission on the court's finding that the phrase "state's ability to pay" within the administrative rule was not interpreted in accord with its plain meaning. This finding is clearly erroneous and contrary to the testimony of Commissioner Roberts who stated if the circumstances warranted a salary adjustment for the Springfield correctional officers, she would have supported this decision regardless of availability of funding. The hearing examiner then asked Roberts the following: 


Q: So, so that it's clear on the record and clear in my mind, your testimony is that the salary adjustment in Springfield was not justified based on the requirements or the criteria of the administrative rule, but that it was justified for the -- the employees at the state penitentiary? 
A: That's right. That's right. Beyond money. 
Q: Notwithstanding -- All right. 
A: I mean, if there was a justification because of a turnover and labor market [in the Springfield area], my position is that we should have found the money and done it. But I did not see that. 
Robert's answers to the hearing examiner's inquiries clearly demonstrate, contrary to the circuit court's finding, that the "state's ability to pay" was not used "to deny the raise request for the Springfield Facility correctional officers." [96 SDO 177] 
[Â¶14] We write also to remind that the enumerated bases for salary adjustment provided in the administrative rule are not a list of required elements, all of which must be present before a salary adjustment can be approved. This is evidenced by the phrase, "or any combination of these," at the end of the list. Given the rule's plain language, we do not agree with the circuit court's finding that "[i]f the State is unable to pay raises of employees in like classes, this is a factor against granting the raise." Nothing in the language of the administrative rule or the facts of this case support such a finding. 
[Â¶15] Nelson instructs that "an agency is usually given a reasonable range of informed discretion in the interpretation and application of its own rules when the language subject to construction is technical in nature or ambiguous, or when the agency interpretation is one of long standing." Nelson, 464 NW2d at 624. We have already noted, according to the plain language of ARSD 55:01:18:20, BOP had authority to adjust salaries within a pay range based on labor market conditions. However, the agency's long-standing interpretation of the rule provides further support for BOP's approval of the salary increases to the Sioux Falls correctional officers. 
[Â¶16] Commissioner Roberts testified that providing salary adjustments upward for correctional officers in this particular case at the Sioux Falls facility only, was not an unusual event for BOP. She testified to the Board's previous responses to similar requests for salary adjustments for groups of employees at one particular facility and not others.{7} We find sufficient evidence that the application of ARSD 55:01:18:20 in this case is not the result of an ad hoc interpretation of the administrative rule but indicative of an "interpretation of long standing." This interpretation is within the standard of "a reasonable range of informed discretion." Nelson, 464 NW2d at 624. We hold the Sioux Falls raises were within the scope and authority of both the administrative rule and SDCL 3-6A-29. 
[Â¶17] We reverse the circuit court decision and remand to the circuit court with instructions to reinstate the decision of the Commission. 
[Â¶18] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur. 
----Footnotes----
1.  The remainder of the turnovers at the Springfield Facility during this time were due to correctional officers' retirements and transfers to other positions within the facility. 
2.  We recognize that the Springfield Facility is located in Bon Homme County which is adjacent to Yankton County. Both counsel and the trial court proceeded under the supposition that the employment statistics available for Yankton County were the relevant and controlling statistics for this facility. 
3.  This rule governs the basis for salary adjustments and provides: 


If an employee's current salary is under 50 percent of the range, the appointing authority may authorize up to a 10 percent increase in salary not to exceed 50 percent of the range. Adjustments within a salary range shall be based on performance, internal equity within the department, labor market conditions, length of service, and the state's ability to pay salaries of employees in like classes, or any combination of these. The total of any salary increases given an employee may not in any one-year period exceed ten percent of the employee's salary. The total of such increases shall be determined by examining the twelve months preceding any proposed increase. However, salary increases mandated by this chapter and salary policy increases may not be used to determine if the total of any increase exceeds ten percent. Increases exceeding these guidelines must have prior approval of the commissioner. In no case may the incumbent receive more than the maximum of the salary range. 
(Emphasis added). 
4.  As conceded at oral argument, this Court has no jurisdiction to order the Legislature to fund raises for the Springfield Facility correctional officers even if we were to find them authorized under the statute and administrative rule. Appropriations of State employees' salaries is clearly a legislative function. However, we can in appropriate cases require the Legislature to follow the laws it enacted. 
5.  Testimony at the Commission hearing indicated six resignations were received within one week. 
6.  Secretary of Corrections Lynne DeLano testified John Morrell & Co. meat packing plant is one of the State Penitentiary's main competitors for employees. 
7.  Ms. Roberts' testimony in this regard was as follows: 


House parents, just at Redfield -- There's houseparents at a lot of different facilities that the Department of Human Services administers. We had a turnover problem on houseparents just at Redfield, and they received raises from 2.9 to 11 percent. 


August of '90, we did mental health aides and techs just at Yankton at the HSC. We did not do them at Redfield or Custer. They have units there, too. 
And March of '91, we had to do a 3 to 5 percent adjustment for all DOT engineers. We had a terrible turnover problem with engineers at that point, and the raises really have addressed that. We don't have a turnover problem anymore. 
And June of '91, Redfield again, we had food service worker and cooks. We could ... not recruit. We could not keep them. We went and gave 2.5 to 11 percent raises just to Redfield, not for Yankton or any of the other food services. I mean, there's a lot of people in those classes, including Springfield. We had a specific labor problem in Redfield, and we made adjustments and alleviated the problem.