#27751-a-LSW

**2016 S.D. 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the Application of
Black Hills Power, Inc. for authority
to increase its electric rates.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK W. BARNETT

Judge

* * * *

MARK A. MORENO of
Moreno, Lee & Bachand, PC
Pierre, South Dakota

ANDREW P MORATZKA of
Stoel Rives, LLP
Minneapolis, Minnesota

    and

CHAD T. MARRIOTT of
Stoel Rives, LLP
Portland, Oregon

Attorneys for appellants GCC Dacotah, Inc., Pete Lien & Sons, Inc., Rushmore Forest Products, Inc., Spearfish Forest Products, Inc., Rapid City Regional Hospital, Inc. & Wharf Resources, Inc., together the Black Hills Industrial Intervenors

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016
OPINION FILED **12/14/16**

LEE A. MAGNUSON
NICOLE O. TUPMAN
Lindquist & Vennum LLP
Sioux Falls, South Dakota

      and

TODD BRINK
AMY KOENIG of
Black Hills Power Corporation
Rapid City, South Dakota

Attorneys for appellee Black Hills Power.


KAREN E. CREMER
Special Assistant Attorney General
South Dakota Public Utilities Commission
Pierre, South Dakota

Attorneys for appellee South Dakota Public Utilities Commission.

#27751

WILBUR, Justice

[¶1.]    In March 2014, Black Hills Power, Inc., (BHP) filed an application for authority to increase electric rates with the South Dakota Public Utility Commission.  In June 2014, Black Hills Industrial Intervenors (BHII)[1] filed a motion to intervene, and the Commission granted the motion.  The parties then agreed to a settlement stipulation regarding the increase in December 2014, but BHP sought to amend the stipulation in February 2015.  BHII resisted the amendment, but the Commission granted the amended settlement stipulation and approved the rate increase.  BHII appeals.

## Background

[¶2.]    Black Hills Power is a public utility in South Dakota, providing electric service to approximately 65,500 customers in the western portion of the state.  As a South Dakota public utility, BHP must provide service to all customers in a given area in return for a state-granted monopoly.

[¶3.]    All utilities must petition the Commission before raising their rates.  BHP applied for a rate increase in March 2014.  As required by SDCL chapter 43-34A, BHP submitted a cost analysis with its petition.  The cost analysis included the "test year" required by ARSD 20:10:13:43.  The test year is used by the Commission in its analysis of whether the utility's costs merit a rate increase.  The utility must apply for the rate increase within six months of the end of the test year.

---

1.    BHII consists of appellants GCC Dacotah, Inc., Pete Lien & Sons, Inc., Rushmore Forest Products, Inc., Spearfish Forest Products, Inc., Rapid City Regional Hospital, Inc., and Wharf Resources (U.S.A.), Inc.

-1-

BHP's test year ran from September 30, 2012, to September 30, 2013. If granted, the rate increase for a typical customer would be approximately $10.91 per month.

[¶4.] In June 2014, BHII filed a motion to intervene in BHP's rate-increase application, which the Commission granted. The Commission, BHP, and BHII exchanged discovery and began negotiations to settle and stipulate to the rate increase. BHP filed a joint motion for approval of the settlement stipulation in December 2014, and the Commission held a hearing on the matter in January 2015. One of the issues the parties debated at the hearing was BHP's pension expenses. In its cost analysis, BHP averaged its pension expenses over the five-year period from 2010 to 2014, while BHII argued that the actual costs from 2014 should be used. BHII would later argue that a five-year period from 2011 to 2015 would be most appropriate.

[¶5.] Before the Commission voted on the matter, BHP filed an amended settlement stipulation. This amendment removed a previous cost allocation of $286,000 to one of BHP's affiliates and replaced that amount with $413,000 for expenses related to a power plant. The Commission considered the amended stipulation and voted to approve the settlement.

[¶6.] BHII appealed the approval of the amended settlement stipulation to the circuit court, which affirmed the Commission's decision. BHII now appeals to this Court, arguing three issues:

> 1. Whether the Commission misinterpreted ARSD 20:10:13:44 by allowing BHP to make adjustments to its cost calculation after its initial application.

2.       Whether the Commission erred by allowing BHP to exclude the year 2015 from its five-year normalization of pension expenses.

3.       Whether the Commission erred when it concluded that BHP met its burden of proof regarding the inclusion of its incentive-compensation plan in the cost analysis.

## Decision

[¶7.]     1.       Whether the Commission misinterpreted ARSD 20:10:13:44 by allowing BHP to make adjustments to its cost calculation after its initial application.

[¶8.]     This issue involves the interpretation of the language of an administrative rule. "Administrative regulations are subject to the same rules of construction as are statutes." *Citibank, N.A. v. S.D. Dep't of Revenue*, 2015 S.D. 67, ¶ 12, 868 N.W.2d 381, 387 (quoting *Westmed Rehab, Inc. v. Dep't of Soc. Servs.*, 2004 S.D. 104, ¶ 8, 687 N.W.2d 516, 518). We review the agency's interpretation de novo. *See Nelson v. S.D. State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D. 1991).[2]

---

2.    The parties spend a significant amount of argument in the briefs debating the correct standard of review, focusing on whether the agency's interpretation of its own long-standing rule is entitled to deference. An agency is normally entitled to a "reasonable range of informed discretion" when the language of the rule is "technical in nature or ambiguous, or when the agency interpretation is one of long standing." *Nelson*, 464 N.W.2d at 623. In promulgating this rule, the Court in *Nelson* cited the decisions of other state courts. *Id.* These cases collectively provide that, where the language of the rule is unambiguous, deference need not be given. *Iowa Fed'n of Labor v. Iowa Dep't of Job Serv.*, 427 N.W.2d 443, 449 (Iowa 1988) (evaluating the reasonableness of an agency's interpretation according to statutory rules of construction); *In re Se. Minn. Cit. Action Coun.*, 359 N.W.2d 60, 63 (Minn. Ct. App. 1984) ("However, we need not defer when the language employed or the standard delineated is clear and capable of understanding."); *In re Stone Creek Channel Improvements*, 424 N.W.2d 894, 900 (N.D. 1988) ("No deference is called for when the regulating language is clear."). As the language is not ambiguous, deference to the Commission's interpretation is unnecessary.

[¶9.] "When regulatory language is clear, certain and unambiguous, [the Court's] function is confined to declaring its meaning as clearly expressed." *Citibank*, 2015 S.D. 67, ¶ 12, 868 N.W.2d at 387 (quoting *Westmed Rehab*, 2004 S.D. 104, ¶ 8, 687 N.W.2d at 518). "[I]t is fundamental 'that the words of a [rule] must be read in their context and with a view to their place in the overall [regulatory] scheme.'" *In re Certification of a Question of Law from U.S. Dist. Court, Dist. of S.D., S. Div.*, 2014 S.D. 57, ¶ 8, 851 N.W.2d 924, 927 (quoting *In re Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d 350, 352).

[¶10.] The parties argue about the meaning of ARSD 20:10:13:44, which reads in full:

> The statement of the cost of service shall contain an analysis of system costs as reflected on the filing utility's books for a test period consisting of 12 months of actual experience ending no earlier than 6 months before the date of filing of the data required by §§ 20:10:13:40 and 20:10:13:43 unless good cause for extension is shown. The analysis shall include the return, taxes, depreciation, and operating expenses and an allocation of such costs to the services rendered. The information submitted with the statement shall show the data itemized in this section for the test period, as reflected on the books of the filing public utility. Proposed adjustments to book costs shall be shown separately and shall be fully supported, including schedules showing their derivation, where appropriate. However, no adjustments shall be permitted unless they are based on changes in facilities, operations, or costs which are known with reasonable certainty and measurable with reasonable accuracy at the time of the filing and which will become effective within 24 months of the last month of the test period used for this section and unless expected changes in revenue are also shown for the same period.

The phrase "at the time of filing" in the last sentence of the rule is the point of disagreement between the parties. BHII argues that the "filing" in the phrase refers to the filing of the initial petition. Under this interpretation, "adjustments"

would refer to adjustments in the test-year data and would not be permitted after the filing of the initial application. BHP and the Commission assert that the word "filing" refers to the filing of the adjustment itself, thus permitting adjustments to the cost analysis after the initial application.

[¶11.] The plain meaning of the rule indicates that the Commission's interpretation is correct. The latter half of the rule reads:

> *Proposed adjustments* to book costs shall be shown separately and shall be fully supported, including schedules showing their derivation, where appropriate. However, no *adjustments* shall be permitted unless they are based on changes in facilities, operations, or costs which are known with reasonable certainty and measurable with reasonable accuracy *at the time of the filing* and which will become effective within 24 months of the last month of the test period used for this section and unless expected changes in revenue are also shown for the same period.

ARSD 20:10:13:44 (emphasis added). The emphasized language shows that the noun "adjustments" precedes "filing" in the same sentence. Additionally, the phrase "proposed adjustments" begins the sentence prior. The only reference to the filing of the initial application occurs in the first sentence of the rule. Interpreting the rule as referring to the filing of the initial application requires adding "of the initial application" after "filing" in the last sentence. Such an interpretation is prohibited. *City of Sioux Falls v. Ewoldt*, 1997 S.D. 106, ¶ 13, 568 N.W.2d 764, 767 ("[The Court] may not, under the guise of judicial construction, add modifying words to the statute or change its terms." (quoting *State v. Franz*, 526 N.W.2d 718, 720 (S.D. 1995))). As the phrase "at the time of the filing" refers to the filing of the individual

adjustment and not to the filing of the application itself, the Commission

correctly allowed BHP to file the adjustments to its cost analysis.[3]

[¶12.]     2.     Whether the Commission erred by allowing BHP to exclude the year 2015 from its five-year normalization of pension expenses.

[¶13.]     In its cost analysis, BHP included a normalization of its pension

expenses from 2010 to 2014.  Had it included the five-year period from 2011 to 2015,

the normalization would have been higher.  BHII argues that if the Commission

allowed BHP to make adjustments to its cost analysis with new data that would

require the new rate to be higher, BHP should be mandated to include other

adjustments that would decrease the rate.  Nothing in the language of

ARSD 20:10:13:44 indicates that adjustments are mandatory rather than

permissive.  The clause concerning adjustments begins: "*Proposed* adjustments to

book costs shall be shown separately and shall be fully supported, including

schedules showing their derivation, where appropriate."  ARSD 20:10:13:44

(emphasis added).  The emphasized language indicates that any adjustment is to be

proposed by the utility.  The rule does not state that the utility must propose all

possible adjustments to its cost analysis.  Without any language indicating all

possible adjustments are mandatory, BHII's argument is unpersuasive.

[¶14.]     BHII alternatively argues that the Commission's decision to allow

BHP to submit its pension expenses from 2010 to 2014 rather than including 2015

is arbitrary and capricious.  SDCL 1-26-36 states that "[t]he court may reverse or

---

3.     BHII's additional arguments that the Commission should have rejected three of BHP's cost adjustments and one line-item adjustment rest on its incorrect interpretation of ARSD 20:10:13:44 or are otherwise without merit.

modify the [Commission's] decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (6) [a]rbitrary or capricious[.]" A decision is arbitrary or capricious when it is not governed by any fixed rules but when it is based on "personal, selfish, or fraudulent motives, or on false information, and is characterized by a lack of relevant and competent evidence to support the action taken." *In re Jarman*, 2015 S.D. 8, ¶ 19, 860 N.W.2d 1, 9 (quoting *Huth v. Beresford Sch. Dist. #61-2*, 2013 S.D. 39, ¶ 14, 832 N.W.2d 62, 65).

[¶15.] The Commission took a great deal of evidence regarding pension expenses. This evidence indicated strong fluctuation from year to year. There is no indication that the Commission's acceptance of the 2010–2014 pension normalization was in any way based on "personal, selfish, or fraudulent motives" or that the information was in any way false. *Id.* The Commission's consideration of the 2010–2014 normalized expenses while not including 2015 was not arbitrary and capricious.

[¶16.] 3. Whether the Commission erred when it concluded that BHP met its burden of proof regarding the inclusion of its incentive-compensation plan in the cost analysis.

[¶17.] BHII argues that a de novo standard should be applied because "determining whether the uncontroverted facts or the facts as established satisfy the legal standard of proof . . . is a mixed question of law and fact, reviewable de novo." *Erdahl v. Groff*, 1998 S.D. 28, ¶ 30, 576 N.W.2d 15, 21. We agree. In essence, BHII challenges the sufficiency of the evidence, i.e., whether there is enough evidence to support as reasonable and necessary the amount cited by BHP

for its incentive-compensation plan.  BHP had the burden to prove that the costs of the incentive-compensation plan were "prudent, efficient, and economical and are reasonable and necessary[.]"  SDCL § 49-34A-8.4.  "[T]he burden of proof for administrative hearings is preponderance of the evidence." *Irvine v. City of Sioux Falls*, 2006 S.D. 20, ¶ 10, 711 N.W.2d 607, 610.

[¶18.]      The evidence provided was sufficient for BHP to meet its burden of proof, and the Commission did not err in finding that a portion of BHP's incentive-compensation plan is a cost that it can pass on to customers.  BHP's compensation plan is not based solely on corporate financial success.  A significant amount of the plan concerns employee safety and other nonfinancial goals, such as retaining key employees.  The Commission found these portions of the incentive-compensation plan to be in the customers' interest, whereas it excluded BHP's incentive-compensation plan that related to financial corporate success.  The Commission also heard live testimony that the incentive-compensation plan was both reasonable and necessary.  The facts support the Commission's conclusion that these expenses were necessary to provide service to BHP's customers.  The evidence was sufficient to support the Commission's decision.

## Conclusion

[¶19.]      The Commission properly interpreted ARSD 20:10:13:44 when it ruled that BHP could submit adjustments to the settlement stipulation after the filing of the initial application.  The Commission also did not act arbitrarily or capriciously in its consideration of the pension expenses, and the evidence was sufficient to support its inclusion of portions of BHP's incentive-compensation plan.

#27751

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.